(Decided 10th February, 1871.)

MARY P. LLOYD *vs.* ELLEN BROOKS, PETER C. BROOKS, and others.

*Imperfect and incomplete Voluntary Trusts.*

A trust is not perfectly created where there is a mere intention or voluntary agreement to establish a trust, the settlor himself contemplating some further act for the purpose of giving it completion.

B and others proposed to voluntarily convey certain stock in trust for the benefit of L and others. He accordingly wrote to M, requesting him to act as trustee, and desiring him to prepare a deed conveying the stock to himself as such trustee. M agreed to become the trustee, prepared the deed and forwarded it to B, but not being satisfactory it was returned for correction. It was corrected in accordance with instructions and returned to B, who wrote M that the assignment was now as he wished it, and would be executed as soon as he got certain information. Dur-

ing this correspondence certain shares of stock were bought by M with money furnished by B, and certain other shares were transferred by B to M, the stock so transferred and purchased being held by M on the books of the company as trustee, and the certificates were made to him as trustee in amounts to correspond with the quantity of stock to be taken by the respective beneficiaries under the deed. B wrote M, in reply to a letter reporting the purchase and transfer, that the contents were correct and satisfactory, but that as certain affairs were unsettled, the matter would remain as it was until further notice. Afterwards B wrote M that he had changed his mind, and directed that the stock be transferred to one of the settlors, which M accordingly did. There was no proof that the deed was ever executed by more than one of the settlors. It was never delivered, but was destroyed by B. On a bill by L against M and the settlors to enforce the trust, HELD :

That the trust was not established, inasmuch as the settlor intended to complete it by deed.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by the appellant to enforce an alleged voluntary executed trust, and to compel John T. Morris, the alleged trustee, to restore the trust property or pay the value thereof in default of such restoration.

The facts in the case were chiefly disclosed by documentary evidence.

In January, 1866, Peter C. Brooks, by letter, desired to know whether John T. Morris would consent to act as trustee of a trust which he, his mother, Ellen C. Brooks, and Shepherd Brooks were about to create. The terms of this trust were stated and the beneficiaries named, and Morris was requested to prepare an instrument for the purpose "of securing to " the persons named as beneficiaries, two hundred and seventy shares of the Baltimore and Ohio Railroad Company, in specified proportions. Morris consented to accept the trusteeship, and on the 10th of February, 1866, sent to Peter Brooks the proposed instrument of writing, which Peter subsequently, on the 15th of February, returned, with certain corrections and additions endorsed thereon, requesting Morris to make a fair copy of the corrected paper, and to transmit the same to him.. The corrected instrument was transmitted

as directed. Peter C. Brooks, on the 19th of February, 1866, acknowledged its receipt, declared that it was "satisfactory," and that it would be executed as soon as he could get certain information, which he hoped to get by the end of the week.

On the 19th of February, Shepherd Brooks held certificates of Baltimore and Ohio Railroad stock for one hundred shares. On that day he assigned these certificates to "John T. Morris, trustee," and on the same day executed a check in favor of Morris, on the Merchants' National Bank of Baltimore, for $20,000, which Morris was directed to apply to the purchase of additional one hundred and seventy shares of stock, which, added to the one hundred shares already assigned to him, would amount to two hundred and seventy shares, the estate to be held in trust.

On the 1st of March, Morris informed Peter Brooks (who conducted the correspondence throughout) that he had purchased one hundred and seventy shares, as directed, and had had the entire two hundred and seventy shares "transferred to himself, as trustee," in six certificates, each certificate corresponding to the number of shares held for the six beneficiaries, respectively. This transfer was made on the books of the Baltimore and Ohio Railroad Company on the 24th of February, 1866. The bills of Charles Hinkley, broker, for one hundred and seventy shares, were rendered to "John T. Morris, trustee," and were duly paid, 23d of February.

On the 3d of March, Peter Brooks, replying to Morris' letter of the 1st instant, wrote that its contents were noted, and were correct and satisfactory. On the 19th of March, Peter Brooks informed Morris that "we have changed our plans," and directed him to transfer the two hundred and seventy shares he held to Shepherd Brooks. Morris obeyed, and on the 20th of March transferred the same, as "trustee," to Shepherd Brooks, and had certificates therefor issued in the name of the latter.

The correspondence does not show whether the "instrument of writing," which Peter Brooks caused to be prepared,

was or was not executed. Morris testified that after the 3d of March, the day on which Peter acknowledged its receipt, he never saw or heard of it. The answers of Peter and of Ellen Brooks to the bill, deny that it was ever executed by them. The answer of Shepherd Brooks admits that it may have been executed by him, pleads doubtful recollection, and asserts that if he did execute it, he did so subject to a delegated power in Peter to cancel and revoke his act.

It also appears, by the answer of Peter Brooks, that he destroyed the deed by burning.

The Court below dismissed the bill, and from this order the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*L. L. Conrad* and *Bernard Carter*, for the appellant.

The letters of Peter Brooks to John T. Morris, express a clear intention to create a trust, and are sufficient in form and terms to constitute a valid declaration of trust.

The transmutation of title and possession of the legal estate of the stock to the trustee, without any reservation of rights to the settlors, vested said stock absolutely in the trustee for the *use* and *benefit* of the appellant. The instant that the stock vested in the trustee the trust became an *executed* trust, and *ipso facto* the terms and limitations of the trust as declared in said letters became fixed and irrevocable.

The *assignments* of stock from Brooks to Morris, as "*trustee,*" and the purchase by Morris as "trustee" of other stock, with money furnished to him *for that purpose* by the settlors, the taking certificates of stock in his own name as "trustee," and the placing of the stock by him in his own name as "*trustee*" on the books of the company, and the final reassignment of the stock by him as "*trustee*" to Shepherd Brooks, after holding the same nearly thirty days, afford conclusive evidence that such was really his character, and

that he was so regarded in the contemplation of himself and of the settlors.

The assignments are *conveyances under seal,* and the designation therein of Morris, as *"trustee,"* by Shepherd Brooks and by Morris himself, are *acts under seal* which import *absolute verity,* and which the parties executing cannot be allowed to contradict or impeach.

Notwithstanding the settlors may appear to have *at one time* contemplated executing the *"instrument"* referred to in their letters, yet, said deed not being necessary either to the *declaration* or the *perfection* of the trust—not being *essential* or even *competent* to *vest* the *trust estate* in the *trustee,* its execution was not such a *"further act* contemplated by the settlor"* as the law, justly construed, requires to be done in order to give the trust completeness. *Ellison vs. Ellison,* 6 *Vesey,* 661; *Ex parte Pye,* 18 *Vesey,* 149; *Bentley vs. Mackay,* 15 *Beavan,* 12; *McFadden vs. Jenkyns,* 1 *Hare,* 458, *affirmed,* 1 *Phill.,* 153; *Patterson vs. Murphy,* 11 *Hare,* 88; *Stapleton vs. Stapleton,* 14 *Simons,* 186; 11 *Law Times R.,* 495; 9 *Barbour,* 9; *Hill on Trustees,* 126, &c.

Even supposing the law requiring a *"further act* contemplated by the settlor,"* to exist in the sense claimed by the defendants; yet, although the settlors in this case may appear *at one time* to have intended the execution of this *"instrument,"* nevertheless, they having afterwards, by other and independent acts, *absolutely conveyed* the trust estate to the trustee, they must be presumed to have changed their intentions as to said instrument, and are bound by their *acts* which are the strongest evidence of their *intentions* at the time of acting.

A trustee cannot renounce his trust without the consent of the *cestui que trust,* or the authority of a Court of Chancery, and is liable in equity for a breach or perversion of trust. Accordingly, the appellant is entitled to a decree against John T. Morris, for sixty shares of B. & O. R. R. stock, and the profits thereof since the 24th of February, 1866, or for the

equivalent in money of said stock and profits. *Adams' Equity*, 61, 63; *Lewin on Trusts*, 765; *Story's Eq. Jur.*, sec. 1257; *Hill on Trustees*, 219; 9 *Barbour*, 9; 4 *Johns. Ch.* 136; 6 *Seldon*, 246.

*Ed. Otis Hinkley* and *I. Nevett Steele*, for the appellees.

It is a well settled principle that equity will not interfere to enforce or complete the title of a volunteer, or to establish against a settlor a voluntary trust, which is incomplete and imperfect. And the trust is equally incomplete and imperfect, whether there has been a sufficient declaration of trust, but no transfer of the property to the intended trustee, or a good transfer of the property, but no sufficient declaration of the trust. *Hill on Trustees*, 129, 130, and cases cited; 1 *Maddock's Rep.*, 176, 185, 186; *Jeffrys vs. Jeffrys*, 1 *Cr. and Ph.*, 138; *Antrobus vs. Smith*, 12 *Vesey*, 39, 45, 46; *Borum vs. King*, 37 *Alabama*, 606; *Cox vs. Sprigg*, 6 *Md.*, 274, 287.

In this case the trust was never declared or created. There was merely an intention to create it and to create it in a particular way, viz: by a deed. A voluntary trust is never perfectly created where the settlor himself contemplates some further act for the purpose of giving it completion. Where it is intended to declare the trust by deed, there must be a deed and a valid one, and preliminary statements of the settlor as to his intent about the trust, will not serve as a substitute. In no case can expressions of the settlor which indicate an inchoate, incomplete and executory intention to create a voluntary trust, be relied on and enforced as themselves declarations of the trust. *Lewin on Trusts*, 56; *Hill on Trustees*, 91; *Bayley vs. Boulcott*, 4 *Russell*, 345; *Lister vs. Hodgson*, *Law Rep.*, 4 *Equity Cases*, 30, 35; *Smith vs. Warde*, 15 *Simons*, 56; *Jones vs. Lock*, *Law Rep.*, 1 *Chan. Appeals*, 25; *Steere vs. Steere*, 5 *John. Ch. Rep.*, 1; *Harper vs. Phelps*, 21 *Conn.*, 259; *Mory vs. Michael*, 18 *Md.*, 227, 240, 241.

The transfer of the railroad stock to Mr. Morris, as trustee, was made without any declaration of trust, and with the in-

tention and purpose that the trust should be thereafter declared by a deed. This was never done.

. The law is clear that if a voluntary transfer of property be made to a person as trustee, and no trust is declared, or the trust is to be thereafter declared, and no declaration is made, there is a resulting trust for the donor. *Hill on Trustees,* 172, 173; *Morice vs. Bishop of Durham,* 10 *Vesey,* 527; *Sidney vs. Shelley,* 19 *Vesey,* 359, 360, 361; *Brown vs. Jones,* 1 *Atk.,* 188, 191.

There was no declaration of trust in this case so long as the proposed deed remained unexecuted, is made clear by the consideration that the trust was intended to be a special one. Until the execution of the deed, the terms of the trust were uncertain, indefinite and liable to be changed by the donors. The deed was therefore necessary not only to name the beneficiaries, but to limit and define the interest they were to take, and the rights and powers they were to enjoy, and also to ascertain and fix the duties and powers of the trustee.

GRASON, J., delivered the opinion of the Court.

The bill in this case was filed to enforce an alleged voluntary executed trust in favor of the appellant, and to compel John T. Morris, the alleged trustee, to restore the trust property, or to pay the value thereof in default of such restoration. Was there in this case a valid executed trust which a Court of Equity can enforce?

LEWIN, in his treatise *on Trusts, page* 81, *marg.,* lays down the rule that "a trust is not perfectly created where there is a mere *intention,* or voluntary agreement to establish a trust, the settlor himself contemplating some further act for the purpose of giving it completion." This principle is too clear and well established to be seriously controverted. See *Bayley vs. Boulcott,* 4 *Russ.,* 345; *Lister vs. Hodgson, Law Rep.,* 4 *Eq. Ca.,* 33, 34; *Gardner, and others, vs. Merritt,* 32 *Md.,* 78. The proof in this case shows that the appellees intended to create a trust

3                          v. 34

at one time in favor of the appellant, and others, and that John T. Morris was applied to, and consented to act as trustee, and that two hundred and seventy shares of Baltimore and Ohio Railroad Stock were transferred to him as trustee; but the fact is proved beyond question that it was well understood by the appellees and Morris, that the trust was to be declared by deed, which Morris, as the attorney of the appellees, was instructed to prepare and did prepare and send on to them for execution. That deed was never executed by more than one of the appellees and was never delivered, but was destroyed. In the cases of *Bayley vs. Boulcott*, and *Lister vs. Hodgson*, as in the case now before us, the party, who was charged with having created the trust, intended to create it by deed, and it was held in both cases that no trust had been created, because in the one case the deed was never executed, and in the other, because the deed, which was executed, did not declare the trust. It was contended by the counsel of the appellant that the letters of Peter C. Brooks to Morris constituted a sufficient declaration of trust. The simple and conclusive answer to this is, that they were never intended to be a declaration of trust, but were nothing more than instructions to the attorney for preparing the deed of trust, thereafter to be executed, by which the trust was to have been created. In the case of *Jones vs. Lock, Law Rep.*, 1 *Chan. Appeals*, 28, Lord Chancellor CRANWORTH says: "the question in each case is one of fact; has there been a gift or not, or has there been a declaration of trust or not?" In determining this, the acts of the party, as well as his intention in doing those acts, must be considered and regarded by the Court. The appellees in this case, so far from intending the correspondence with Morris as a declaration of trust, would, no doubt, be greatly surprised to be now told that their instructions for the preparation of the deed of trust, had effected what they intended to accomplish by the deed, and divested them of their property and vested it in Morris for the benefit of the appellant.

If Morris held the stock as the agent and attorney of the appellees, it was his duty as such to transfer the stock to them upon their order to do so. If he held it as trustee, no trust having been declared, a trust resulted in their favor by operation of law and he was therefore justified in transferring it to them when directed by them to do so. The decree of the Court below must be affirmed.

*Decree affirmed.*

