The complainants, who are husband and wife, filed this bill to compel the defendant Sophie E. Zuck, an aunt of Mrs. Sommers, to execute a deed to them for premises situate in *Page 246 
Mt. Arlington, Morris County. Complainants claim that Sophie E. Zuck orally conveyed to them the said premises, on which is situate a 100 room hotel and seventeen bungalows, on the shore of Lake Hopatcong; that complainants took possession of said premises and subsequently made valuable, substantial and permanent improvements to said buildings. The bill also prayed that the defendants be restrained from proceeding with a certain dispossess action against complainants. The restraint was granted pending final hearing.
The defendants' answer denies the claim of an oral conveyance of the premises and also denies that valuable, substantial and permanent improvements were made to said premises by the complainants. The answer also alleges that the complainants were tenants under a written lease dated April 28th, 1943, and that complainants have breached the terms of said lease and have not paid the rent as agreed.
The evidence discloses that in November, 1942, the premises in question were owned by Sophie E. and Matilda E. Zuck, sisters. They made reciprocal wills which provided that upon the death of each testatrix her entire estate should go to the other. Each will also contained a provision that if the sister named did not survive the testatrix, the entire estate should go to Evelyn M. Sommers, one of the complainants, and Frederick W. Zuck, one of the defendants, who were a niece and nephew, respectively.
Complainants claim that in January, 1943, the premises in question were in a dilapidated condition; that Sophie and Matilda Zuck were physically unable to operate the hotel business and that since Mrs. Sommers was ultimately to share in the premises by reason of the reciprocal wills, they thought that Mrs. Sommers and her husband should assume the ownership and control of the premises. They now claim that as a result of this oral conveyance they took possession of the premises and expended money, labor and all the profits which they derived from the operation of the premises for the improvements thereon. They also claim that they relied upon the oral conveyance and sold their home, where they resided, and used the proceeds of the sale for the improvement and *Page 247 
furnishing of the said hotel. From the evidence, it appears that the said aunts also made substantial financial contributions to the cost of the improvements. In fact, the sums which they contributed greatly exceeded the amount contributed by the complainants. Complainants explain these contributions by the aunts as gifts to them personally.
About a month after complainants took possession, they executed and accepted a written lease for the said premises. They claim that the purpose of this lease was merely a protective scheme to provide security for the owners of record against any liability or law suits and that the amount of rent was intended to cover maintenance items such as taxes and insurance.
Defendants contend that the lease is exactly what it purports to be; that is, a lease for one year, and that complainants remained in possession as holdover tenants. A number of letters were placed in evidence written by the complainants to the aunts. A letter written by Mrs. Sommers in the autumn of 1945, and marked "Exhibit D-10," reads as follows:
"How did you make out with the men that were up here today? If you really want to sell the place we can get you more bids on it. Perhaps you can get a better price for it. It would be a shame not to get a good price for it after all the money that has been put into it. Let us know soon and we can get some offers for it."
This letter shows that the complainants did not regard themselves as owners. While the construction given to an agreement by the parties themselves is not necessarily controlling, it may, nevertheless, be a guide to the court in an effort to determine the intended meaning of the contract. SeeKingston Trap Rock Co. v. Eastern Engineering Co.,132 N.J. Law 254, 259.
Complainants claim that they have completely changed their way of life and have relied upon the alleged oral conveyance and that, therefore, this court should direct defendants to execute a deed. This argument falls since their action is as much referable to the lease as to the alleged agreement. The complainants wished to operate the hotel themselves. *Page 248 
In order to do so successfully it was necessary that Mr. Sommers give up his former employment and devote his entire time to the hotel business. Unfortunately the complainants sold their home and invested the proceeds, amounting to $1,025, in improvements to the hotel. Under the terms of the lease, complainants were obliged to make "all necessary repairs to the interior of the said demised premises at their own cost and expense." The cost of those repairs greatly exceeded that amount and, as I stated above, the balance was paid by the two aunts.
A parol gift of land will be enforced in equity when it is accompanied by possession and when the donee has been induced by the promise of the gift, to make valuable improvements of a permanent nature. Such a parol gift, however, must be proved by clear and unequivocal evidence. See Roberts-Horsfield v.Gedicks, 94 N.J. Eq. 82, 84; affirmed, 96 N.J. Eq. 384. I am not convinced that the complainants' proof meets the standard above set forth.
The bill of complaint does not pray for specific performance but the solicitor of complainants, in his brief, asks that a decree be made requiring such performance of the alleged contract which the aunts entered into when they executed the reciprocal wills.
Under the terms of these wills each testatrix named her niece and nephew; to wit, Mrs. Sommers and Frederick W. Zuck, to take her estate in the event that the sister named as a primary beneficiary should predecease the testatrix. It is argued that the will of Sophie E. Zuck has assumed an irrevocable character since the death of Matilda E. Zuck and the probate of her will.
Complainants urge that since Sophie E. Zuck received the entire estate of Matilda, that Sophie is bound in equity, because of the receipt of said benefits, to devise and bequeath her entire estate to her niece and nephew. Complainants do not contend that there is any limitation on the power of Sophie E. Zuck to dispose of her property during her lifetime, but they argue that any testamentary disposition of the property by Sophie E. Zuck must be made in favor of her *Page 249 
niece and nephew according to the terms of the alleged contract.
The relief sought is based merely on the fact that the aunts executed reciprocal wills. This fact is alleged in the bill and admitted in the answer. No proof was adduced as to any intent on the part of the testatrices to enter into a contractual obligation at the time the wills were executed. There was no evidence of any agreement by them that the wills should remain irrevocable after the death of one of them. Clear and convincing proof is required to establish a contract of the kind here alleged. The absence of such proof defeats the contention of the complainants. Vice-Chancellor Backes, in dealing with a similar case, said:
"The mutual wills do not on their face purport to be contractual. Their reciprocal provisions indicate that they were the result of an understanding between Mr. and Mrs. Tooker, but an understanding does not necessarily spell contract. The vital question is, Was it agreed by them that the wills should remain irrevocable after the death of either? For the solution of this we must look to the extraneous testimony, keeping in mind that, to establish an agreement, the proofs must be clear and convincing. The contract may be found in an express promise, or inferred, as a conclusion of fact, from the circumstances surrounding the parties." Tooker v. Vreeland, 92 N.J. Eq. 340,342 and 343; affirmed, Tooker v. Maple, 93 N.J. Eq. 224.
I will advise a decree in accordance with this opinion. *Page 250