25 N.J. Super. 376 (1953)
96 A.2d 426
ADELAIDE E. MINOGUE AND WARREN E. EMLEY, JR., INDIVIDUALLY AND AS ONE OF THE EXECUTORS OF THE WILL OF WARREN E. EMLEY, SR., DECEASED, PLAINTIFFS,
v.
MARY IDA LIPMAN AND HERBERT D. BROWN, INDIVIDUALLY AND AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF MARY L.W. EMLEY, DECEASED, BETTY ANN BROWN AND JOHN N. BROWN, AND HERBERT D. BROWN AS ONE OF THE EXECUTORS OF THE WILL OF WARREN E. EMLEY, SR., DECEASED, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 27, 1953.
*379 Messrs. Minton, Dinsmore and Lane (Mr. B. Braddock Dinsmore, Jr. and Mr. Arthur S. Lane appearing), and Mr. George E. Beach, of the Ohio Bar, admitted on motion pro hac vice, attorneys for plaintiffs.
Mr. Samuel D. Hoffman, attorney for defendants.
EWART, J.S.C.
By this suit plaintiffs seek to establish that Warren E. Emley, Sr. and Mary L.W. Emley, his wife, now both deceased, executed on December 22, 1950 mutual, reciprocal, and irrevocable wills in accordance with an agreement between them by which they disposed of their combined estates for the benefit of one another and ultimately to their respective children in certain proportions; adjudging that the provisions of Mrs. Emley's will of December 22, 1950 must be given effect notwithstanding her subsequent revocation thereof; impressing a trust upon certain real property *380 of which Mrs. Emley died seized; appointing a trustee to control and administer the assets of the estate of Mrs. Emley; and restraining the defendants from selling or otherwise disposing of such assets of Mrs. Emley's estate.
There was little dispute at the trial as to the facts of this case. The dispute rather turns on the inferences to be drawn from the admitted facts and the legal effect thereof.
From the admissions contained in the pleadings, the stipulations made during the trial of the case, and the evidence produced at the trial, I find the following facts:
Warren E. Emley, Sr., a widower, and Mary L.W. Brown, a widow, were married August 18, 1945. Mrs. Brown was a sister of Mr. Emley's first wife. By this earlier marriage, he was the father of the plaintiffs Adelaide E. Minogue and Warren E. Emley, Jr., and by an earlier marriage, Mrs. Brown was the mother of the defendants Mary Ida Lipman, Herbert D. Brown, Betty Ann Brown and John N. Brown.
There were no issue born of the marriage between Mr. Emley and Mrs. Brown.
Mrs. Brown's first husband had been a professor at Rutgers University in New Brunswick, N.J., and Mr. Emley, in his later years, was also a professor of chemistry at Rutgers.
At the time of the marriage in 1945 Mrs. Brown was and had been the owner in her own name of land and a cottage located on a lake in the Catskill Mountains, at Roscoe, New York, particularly described in paragraph 4 of the complaint.
In the month of October 1946, following their marriage in August 1945, Mr. and Mrs. Emley purchased a home at No. 11 Cleveland Avenue, Highland Park, N.J. (sometimes erroneously referred to as the New Brunswick property), and had title thereto taken in their joint names as tenants by the entirety. That property is particularly described in paragraph 5 of the complaint.
Mr. Emley was a person of methodical habits and appears to have kept meticulous accounts of his financial transactions, including the making up on January 1 of each year of a statement of his assets, liabilities and net worth, which practice he followed for many years, and after his second *381 marriage in 1945 he also kept the same sort of a record of his wife's assets, liabilities and net worth.
After the marriage in 1945 considerable sums of money were expended by both Mr. and Mrs. Emley in improvements on the Roscoe, New York, property. They occupied the Roscoe cottage during the summer season and it appears that their respective children, and the children's families, also used the Roscoe, New York, cottage as a place for summer vacations.
And after acquisition of the Highland Park property in 1946 Mr. and Mrs. Emley also expended considerable sums of money in alterations and improvements on that property.
A memo in Mr. Emley's handwriting dated September 26, 1949 (Exhibit P-10) indicates with reference to the Roscoe, New York, property that the total investment in that property had been some $14,467.30, of which total Mrs. Emley had invested $11,652.38 and Mr. Emley the sum of $2,814.92, or roughly 80% by Mrs. Emley and 20% by Mr. Emley. And the same memo with reference to the Highland Park property indicates a total investment of $25,391.10, of which Mrs. Emley invested $7,748.51 and Mr. Emley $17,642.59, roughly 30% by her and 70% by him.
At the trial 26 cancelled checks made by Mr. Emley, aggregating the sum of $14,480.99, were produced, marked Exhibit P-3, and four cancelled checks made by Mrs. Emley, aggregating $1,550, were produced and marked Exhibit D-1, and it was stipulated by counsel for the respective parties that all of the 26 checks marked Exhibit P-3, aggregating $14,480.99, represented expenditures by Mr. Emley in the acquisition and improvement of the Highland Park property; that the four cancelled checks of Mrs. Emley, aggregating $1,550, plus an additional sum of $6,000 for which no check was produced, making a total of $7,550, represented investments by Mrs. Emley in the acquisition and improvement of the Highland Park property.
Counsel further stipulated at the trial that after the 1945 marriage both Mr. and Mrs. Emley contributed to the improvements of the Roscoe, New York, property, but the *382 amount contributed by each, or the total, was not stipulated, nor was other proof offered as to the amount of the contributions by each of them, other than the memo in Mr. Emley's handwriting marked Exhibit P-10 and referred to above.
Mr. Emley died suddenly and unexpectedly on June 5, 1951, at the approximate age of 65 years. His wife, who was a few years younger than he, died February 1, 1952.
Mr. and Mrs. Emley cohabited as man and wife from the date of their marriage in 1945 until his death in 1951. In December of 1950 and prior thereto Mr. Emley, although older than his wife, appeared to be in good health and his death on June 5, 1951 was not anticipated. On the other hand, Mrs. Emley was known to be suffering from cancer and it was stipulated by counsel that both Mr. and Mrs. Emley in December of 1950 contemplated that she would die before he.
In the situation disclosed by the foregoing recitals, Mr. and Mrs. Emley appeared together on December 22, 1950 at the New Brunswick office of George R. Morrison, Esquire, who had been practicing law in New Brunswick for some 35 years, and Mr. Emley announced in the presence of his wife that they wanted to execute wills. In fact, Mr. Morrison knew the purpose of their visit because Mr. Emley had telephoned him a day or two before and had made an appointment with Mr. Morrison for December 22 to have the wills prepared.
Mr. Morrison, in his office on December 22, 1950, prepared separate wills for Mr. and Mrs. Emley, which were drawn and executed by each of them on that date.
The attorney, Mr. Morrison, had represented Mr. Brown, the first husband of Mrs. Emley, for a period of some 18 or 20 years; he knew of the cottage in Roscoe, New York, and that Mrs. Emley had title thereto; he represented the Emleys in the purchase of the Highland Park property in October of 1946 and knew that they held title as tenants by the entirety, and, indeed, Mr. Morrison has acted as attorney for both the executors of Mr. Emley's estate and for the executors of Mrs. Emley's estate since their respective deaths.
*383 At the conference in Mr. Morrison's office on December 22, 1950, prior to the preparation and execution of the respective wills, Mr. Emley did the talking, in the presence of Mrs. Emley, and gave instructions for the preparation of the two wills. Mrs. Emley, who was suffering from cancer, was in visible pain and had little to say. However, after receiving instructions from Mr. Emley as to the contents of the two wills, attorney Morrison inquired of Mrs. Emley whether that was the way she wanted it and she responded: "That's the way he wants it, so what can I do?" However, after Mr. Morrison had prepared the two wills, he had Mrs. Emley read over her will before signing it; he said she was perfectly willing to execute it; that she did sign and publish it to be her will, and duly executed it; and that he, Morrison, would not have permitted her to execute it had she been unwilling so to do. In addition thereto, Mr. and Mrs. Emley, a few days after the execution of the will, and during the 1950 Christmas vacation period, visited overnight with Mrs. Adelaide Emley at the latter's home in Ocean City, N.J. She was the widow of Mr. Emley's deceased brother. On this occasion, immediately upon the arrival of Mr. and Mrs. Emley at the home of Adelaide Emley in Ocean City, and even before Mary L.W. Emley had an opportunity to remove her coat and hat, she announced to the Mrs. Emley whom she was visiting that they (she and her husband) had just been to a lawyer; had made out their wills; said they had each appointed as executors one of the children from each of the families so that there would be no trouble; and Mrs. Mary L.W. Emley seemed quite jubilant and happy about it. Mr. Emley said little about the matter except, with reference to the wills, that it was all fixed. On that occasion Mr. and Mrs. Emley remained overnight with Mrs. Adelaide Emley at Ocean City, but there was no further conversation about the will nor did they tell Mrs. Adelaide Emley, nor did she inquire, anything about the contents of the wills other than the fact that they had named as executors one person from each side of the family.
*384 Mr. Emley's will, a copy whereof is annexed to the complaint, which was duly probated after his death on June 5, 1951, was prepared by attorney Morrison in accordance with the instructions given him by Mr. Emley and acquiesced in by Mrs. Emily. The first clause of his will directs the payment of debts. The second and third clauses of his will deal with the Roscoe, New York, property and the Highland Park property, as more fully discussed hereafter. By the fourth clause of his will he gives, devises and bequeaths all of the rest, residue and remainder of his estate, both real and personal, and of every nature and description, to his wife, Mary L.W. Emley, for and during the term of her natural life and on her death or remarriage, the remainder is given outright to his two children, Adelaide E. Minogue and Warren E. Emley, Jr., share and share alike. By the fifth clause of his will he nominates and appoints his son, Warren E. Emley, Jr., and his stepson, Herbert D. Brown, executors. By the sixth clause of the will he confers upon his executors power to sell real estate. And by the seventh clause of his will he revokes all prior wills.
The portions of his will out of which this litigation arises are the second and third clauses, which read as follows:
"SECOND I give, devise and bequeath the interest in the property which I own at Tennanah Lake, Sullivan County, Roscoe, New York, to my children and step-children in the following proportions:
A 20% part thereof to my children, ADELAIDE E. MINOGUE and WARREN E. EMLEY, JR.
An 80% part thereof to my step-children, HERBERT D. BROWN, MARY IDA LIPMAN, JOHN W. BROWN and BETTY ANN BROWN.
I order and direct that my step-children be given the first opportunity to purchase the 20% interest of my children, and request that the appraisal of said property used for Inheritance Tax purposes shall be the price.
I further order and direct that if my step-children shall not be in a position to pay the 20% interest in cash that they be permitted to execute and deliver to my children, ADELAIDE E. MINOGUE and WARREN E. EMLEY, JR., a Direct Reduction purchase money Mortgage for the amount equivalent to a 20% interest, which shall be amortized over a period of 10 years with interest at the rate of four (4%) per cent.
*385 THIRD I give, devise and bequeath all my right, title and interest in the property known as No. 11 Cleveland Avenue, Highland Park, New Jersey to my children and step-children in the following proportions:
A 70% part thereof to my children, ADELAIDE E. MINOGUE and WARREN E. EMLEY, JR.
A 30% part thereof to my step-children, HERBERT D. BROWN, MARY IDA LIPMAN, JOHN W. BROWN and BETTY ANN BROWN.
I order and direct that my children be given the first opportunity to purchase the 30% interest of my step-children and request that the appraisal of said property used for Inheritance Tax purposes shall be the price.
I further order and direct that if my children shall not be in a position to pay the 30% interest in cash that they be permitted to execute and deliver to my step-children HERBERT D. BROWN, MARY IDA LIPMAN, JOHN N. BROWN and BETTY ANN BROWN, a Direct Reduction purchase money mortgage for the amount equivalent to a 30% interest, which shall be amortized over a period of 10 years with interest at the rate of four (4%) per cent."
Attorney Morrison, knowing that title to the Roscoe, New York property was vested in Mrs. Emley alone, and that title to the Highland Park property was vested in Mr. and Mrs. Emley as tenants by the entirety, called those facts to the attention of Mr. Emley prior to the preparation of his will, but Mr. Emley disposed of any objection by saying: "That will be taken care of." The 20%-80% division of the Roscoe, New York, property set forth in the second clause of Mr. Emley's will, and the 70%-30% division of the Highland Park property referred to in the third clause of Mr. Emley's will, were figures furnished Attorney Morrison by Mr. Emley. Attorney Morrison inquired of Mr. Emley, in the presence of Mrs. Emley, how they arrived at those figures, and Mr. Emley responded: "We have adjusted that between ourselves." Attorney Morrison was aggravated somewhat by Mr. Emley's assumption that Mrs. Emley would die first (and she was known to be suffering from cancer at the time), but no particular discussion occurred in Mr. Morrison's presence on the subject of who would die first. Mr. Emley apparently just assumed that would be the order of events. Again with reference to the 20%-80% division of the Roscoe, New York, property and the 70%-30% division of the *386 Highland Park property, Attorney Morrison did not like the form the will was taking and tried to argue Mr. and Mrs. Emley out of using the form which the bequests and devises took under the second and third clauses of Mr. Emley's will, and suggested that it could be done in a different way, but was unable to persuade them to make the change and they (Mr. and Mrs. Emley) had their own way about the manner in which the will should be drawn. Attorney Morrison testified that he presumed that the disposition of the Roscoe, New York, property and of the Highland Park, N.J., property in Mr. Emley's will (and also in Mrs. Emley's will as hereinafter mentioned) was done by agreement and understanding between Mr. and Mrs. Emley. Prior to drawing the wills on December 22, 1950, attorney Morrison informed Mr. Emley that he had no interest in the Roscoe, New York, property to give away by his will, but Mr. Emley said: "That will be taken care of."
Neither Mr. Emley nor Mrs. Emley told attorney Morrison that there was any agreement between them to make mutual wills, or that their wills were to constitute a final disposition of their properties, nor that the wills were to be binding upon the survivor of them, nor that the wills were to be irrevocable so far as concern the survivor of them. In fact, at the conference with attorney Morrison when the wills were prepared, nothing was said by either Mr. or Mrs. Emley about any agreement or understanding between them that would prevent the survivor of them from altering or revoking his or her will.
Attorney Morrison did not suggest to either Mr. or Mrs. Emley at the time of the preparation of the wills on December 22, 1950 that the survivor of the two of them might change his or her will, nor that a will was ambulatory in its nature and subject to revocation and change.
Following Mr. Emley's death on June 5, 1951, Mrs. Emley did receive income from Mr. Emley's residuary estate under the fourth clause of his will.
Mr. Emley's will was prepared and executed on December 22, 1950. On the same day and at the same time, Mrs. Emley's *387 will was prepared and duly executed by her. A copy of her will of December 22, 1950 was not produced, nor were the stenographic notes from which the will was typed produced, but attorney Morrison was able to testify as to the contents of her will. Her will was in all respects identical with her husband's will, including the appointment of the same executors, excepting for a slight change of phraseology in the second and third clauses of the will, with no change in meaning, made necessary by the use of different pronouns in her will than would appear in his; and by a reference to her husband's children as her stepchildren, etc.; and excepting that the fourth or residuary clause of her will bequeathed and devised the remainder interest, after the death of her husband, to her four children, share and share alike.
Mr. Emley's will of December 22, 1950 remained in force and effect at his death on June 5, 1951, and was duly probated thereafter. And Mrs. Emley's will was still in force and effect on the death of her husband. However, two days after his death and on June 7, 1951 she had attorney Morrison prepare a new will, a true copy of which is annexed to the complaint filed in this cause. This later will was executed on June 7, 1951; revoked all former wills; appoints her children, Mary Ida Lipman and Herbert D. Brown, as executors; and bequeaths and devises her entire estate, real and personal, to her four children, share and share alike. Her stepchildren, Warren E. Emley, Jr. and Adelaide E. Minogue, are not mentioned in her will of June 7, 1951. And her will of June 7, 1951 remained in full force and effect at the time of her death on February 1, 1952 and was duly probated after her death.
The wills of Mr. and Mrs. Emley, prepared and executed December 22, 1950, in the second and third clauses thereof, both provide that in making the percentage divisions of the Roscoe, New York, and Highland Park, New Jersey, properties, that the appraisal of said properties used for inheritance tax purposes shall be the price to which the percentages shall apply. In the inheritance tax proceedings for Mrs. Emley's estate, a valuation of $18,000 was fixed on the Highland *388 Park property and a valuation of $20,000 on the Roscoe, New York, property.
Mr. and Mrs. Emley cohabited together from the date of their marriage in 1945 until his death on June 5, 1951. There was no proof to indicate that they did not live together harmoniously. Furthermore, the relations between Mrs. Emley and her stepchildren, and between Mr. Emley and his stepchildren, and between the children of Mr. Emley on the one hand and the children of Mrs. Emley on the other, appears to have been harmonious and friendly.
Initially, it is to be noted that this suit does not involve an attempt to enforce a verbal agreement to make a will. Mary L.W. Emley, deceased, did in fact make and execute a will on December 22, 1950 which plaintiffs assert was executed in accordance with the terms of a compact between her and her husband, Warren E. Emley, Sr., that their respective wills, both executed on the date mentioned, should be irrevocable. As was said by the late Vice-Chancellor Backes in Tooker v. Vreeland, 92 N.J. Eq. 340 at 343 (Ch. 1921), affirmed Tooker v. Maple, 93 N.J. Eq. 224 (E. & A. 1921), the vital question for determination in this suit is whether there was a compact, or agreement, supported by a sufficient consideration, between Mr. and Mrs. Emley that their respective wills, both executed December 22, 1950, should remain irrevocable after the death of either. For an answer to that question we must look at the terms of the two wills in question and to extraneous testimony as to what was said and done at or about the time of the execution of the wills and to the circumstances surrounding and the situation of Mr. and Mrs. Emley at and prior to the date of the execution of said wills. Tooker v. Vreeland, supra; Sommers v. Zuck, 139 N.J. Eq. 245 (Ch. 1947); Annotation, 169 A.L.R., pages 62-64.
A will by its very nature is ambulatory, subject to revocation during the life of him who makes it, and holding a will to be irrevocable would destroy its essence as a will. Eggers v. Anderson, 63 N.J. Eq. 264 at 267 (E. & A. 1901); 57 Am. Jur., p. 322, sec. 458. Nevertheless, a person may *389 enter into a binding contractual obligation to make a certain disposition by will of his property. Eggers v. Anderson, supra, at page 267; Tooker v. Vreeland, supra, at page 342; 57 Am. Jur., page 148; Annotation, 169 A.L.R., pages 28-29.
If one should, by virtue of a contract, execute a will and covenant not to change it, and should nevertheless afterwards revoke it, substituting another and later will in its place, the later will only could be admitted to probate as a will, in which event the other party could under proper circumstances obtain redress only by pursuing at law or in equity such remedy for breach of contract as the rules of those jurisdictions may provide. Eggers v. Anderson, supra, at page 267; Tooker v. Vreeland, 92 N.J. Eq. 340, at 342 (Ch. 1921), affirmed 93 N.J. Eq. 224 (E. & A. 1921); Howells v. Martin, 101 N.J. Eq. 275, at 277-278 (E. & A. 1927); 28 Harv. L. Rev., pages 248-250; Annotation, 169 A.L.R., page 61.
From the admitted mutability of wills, it follows that if the whole arrangement or contract between two persons is fulfilled by the mere making of a will, and nothing legally binding upon him who signs the instrument to let it remain unrevoked is contemplated, then the obligatory force of a contract is not intended and the one who makes the will remains at liberty to change his mind and his will. The mere consent to make a will in a particular fashion, or providing particular disposition of the testator's property, is not sufficient proof to establish that testator has assumed a legal obligation not to revoke or change his will. Eggers v. Anderson, supra, at page 267; Howells v. Martin, 101 N.J. Eq. 275 (E. & A. 1927); 57 Am. Jur., page 154, sec. 174; Annotation, 169 A.L.R., pages 28-29.
But where a man and his wife enter into a compact, supported by sufficient consideration, to dispose of their combined estates in a certain fashion, the terms of which find expression in their mutual wills, the contract is enforceable in equity. Deseumeur v. Rondel, 76 N.J. Eq. 394 (Ch. 1909); Tooker v. Vreeland, supra, page 342; Sick v. Weigand, *390 123 N.J. Eq. 239 (E. & A. 1937); 57 Am. Jur., page 154, sec. 174. Such compact or agreement, to be enforceable, must be founded upon a valid consideration, certain and defined, equal and fair, and sufficiently proven. Tooker v. Vreeland, supra, at page 342; Annotation 169 A.L.R., page 28.
While mutual and reciprocal wills may not on their face purport to be contractual, nevertheless their reciprocal provisions may well indicate that they were the result of an understanding between a man and his wife, but such an understanding does not necessarily spell out a contract. Tooker v. Vreeland, supra, pages 342-343.
A contract that mutual and reciprocal wills should be irrevocable may be found in some cases in an express agreement to that effect, or it may be inferred as a conclusion of fact from the circumstances surrounding the parties. Tooker v. Vreeland, supra, at page 343; Trust Co. of N.J. v. Greenwood Cemetery, 21 N.J. Misc. 169 (Ch. 1943); Annotation 169 A.L.R., page 47.
"It is clear that an agreement not to revoke need not be express; it may be implied from statements made by the parties considered in the light of the circumstances under which they were uttered." Annotation, 169 A.L.R., pages 46-47.
Matters apparent on the face of the two wills, together with proof of surrounding circumstances, may constitute sufficient proof of the contract to make irrevocable, mutual and reciprocal wills.
The annotation in 169 A.L.R. contains the following statements on this subject:
"A testamentary contract may be proved by matter apparent on the surface of the wills, manifesting an agreement, as by express statements therein. * * * or by a mutuality of testamentary intention appearing in each will sufficient to show such an agreement. Separate wills may show by appropriate language contained therein that they are the product of an agreement between the testators, or such may appear from the terms of the wills construed with the aid of extrinsic evidence of the surrounding circumstances. Separate wills containing reciprocal bequests may, in combination with other *391 evidence, constitute sufficient proof of the contract for their execution notwithstanding they do not contain a memorandum of the agreement or indicate by express terms that they are the product of an agreement." Page 73.
"Separate wills which are reciprocal in their provisions, are some evidence of a contractual relation between the testators, and may be sufficient, when considered in the light of the circumstances under which they were executed, to establish a contract for their execution." Page 76.
"An agreement to execute wills containing reciprocal bequests and provisions for the benefit of third persons may result by implication from the wills themselves, the relation of the parties, and other circumstances surrounding the parties, and the execution of the wills, including the fact of common knowledge of the terms of the wills, all considered in combination." Pages 77-78.
However, it is also stated in 169 A.L.R. that:
"According to the great weight of authority, the fact that separate wills, executed by two or more persons at about the same time, contain reciprocal or similar provisions, is not of itself evidence of a contract between the testators, although such a contract may appear from the terms of the wills, by direct reference or by inference." Page 74; citing, inter alia, Howells v. Martin, 101 N.J. Eq. 275 (E. & A. 1927).
In Tooker v. Vreeland, supra, at page 345, where the late Vice-Chancellor Backes had to deal with mutual wills made by a husband and wife, he found as a fact from the testimony of the attorney who drew the wills that the wills grew out of, not simply the mutual desire of an aged and affectionate couple to gratify the other's wishes, but a solemn promise, an agreement  a contract  to be performed by the survivor. The vice-chancellor stated:
"The consideration of the contract we readily find in the inducement held out by the one to the other to mutually testate; in the reciprocal gifts of the life estates, and the principal, if necessary; and the execution of the contract on the part of Mr. Tooker, by his unrevoked will at the time of his death. And in the acceptance and the actual enjoyment of the gift by Mrs. Tooker we also find that part performance which takes the oral contract out of the statute of frauds." Page 345.
See also 57 Am. Jur., sec. 713, page 482.
*392 Where one of the parties to a parol agreement to make a will has wholly or partially performed it on his part, the non-fulfillment by the other party is deemed to be a fraud against which equity will afford relief. Hendershot v. Hendershot, 135 N.J. Eq. 232 (Ch. 1944); Tooker v. Vreeland, supra, at page 346; 57 Am. Jur., sec. 713, pages 482 and 483; Annotation, 169 A.L.R., page 44; 28 Harv. L. Rev., pages 248-250.
In Tooker v. Vreeland, supra, the court said:
"* * * and Mrs. Tooker, having accepted the benefit of her husband's gift, became legally, and in conscience, bound to carry out the obligation she undertook."
The annotation in 169 A.L.R. contains the following statements on this subject:
"If two parties verbally agree, each in consideration of the other doing likewise, to make their wills disposing of their properties in a specified manner, and one dies leaving a will which complies with the contract, and the survivor accepts benefits under the will, noncompliance with the agreement by the survivor would operate as a fraud which equity will prevent, and in such a case the acts done are a sufficient part performance to take the case out of the statute of frauds." Page 44.
"The rule is that where separate wills, executed in pursuance of a valid contract between the parties, provide for a life estate to the survivor, with certain remainders over, the survivor, having probated the will of the deceased testator and accepted the benefits thereunder, cannot abrogate or repudiate the contract to the injury of the remaindermen by revoking his own will." Page 48.
Plaintiffs' counsel cite two cases decided by the Supreme Court of Colorado, viz. Wehrle v. Pickering, 106 Colo. 134, 102 P.2d 737 (1940) and Hoff v. Armbruster, Colo., 242 P.2d 604 (1952), in each of which cases mutual reciprocal wills were made by a husband and wife; the husband died first in each case and the court held in each case that the wills were irrevocable after the death of the husband. In neither case was there any proof of an express agreement *393 that the wills should be irrevocable, but that conclusion was reached by the court by inference from the established facts.
Defendants contend that a parol agreement to make a particular disposition by will of one's property, while enforceable in equity under proper circumstances, is to be subjected to close scrutiny and will be enforced only when evidence to support it is clear and convincing and that the agreement or promise, to be enforceable, must be shown to be mutual, definite and certain both with relation to its terms and subject matter, citing Hufnagel v. Scholp, 138 N.J. Eq. 16 (Ch. 1946), and White v. Risdon, 140 N.J. Eq. 613 (Ch. 1947). That is undoubtedly the law in this State. It is to be noted, however, as stated above, that this is not a suit to enforce a parol agreement or promise to make a will. In fact, Mrs. Emley did make a will on December 22, 1950, the terms and provisions of which have been established by the proofs. The real controversy in this case is whether there was a binding agreement, or compact, between Mrs. Emley and her husband that their mutual reciprocal wills, executed simultaneously, should be irrevocable.
And defendants also contend that the mere making of reciprocal wills, without more, is not proof of a contractual obligation that the wills should remain irrevocable, citing Sommers v. Zuck, 139 N.J. Eq. 245 (Ch. 1947); Tooker v. Vreeland, supra; Howells v. Martin, 99 N.J. Eq. 657 (Ch. 1926), reversed 101 N.J. Eq. 275 (E. & A. 1927); and Eggers v. Anderson, supra. Again that is undoubtedly good law. In this case, however, I think there is much more than the mere making of reciprocal wills to support the conclusion that there was an understanding and agreement between Mr. and Mrs. Emley, supported by adequate consideration, that their wills were intended as a final disposition of their respective estates and that they should remain irrevocable. In the following cases, mutual or reciprocal or joint wills were held to be irrevocable even though there was no direct proof of an express agreement or contract to that effect between the makers of the wills: Deseumeur v. Rondel, 76 N.J. Eq. 394 (Ch. 1909); Tooker v. Vreeland, supra.; *394 Sick v. Weigand, 123 N.J. Eq. 239 (E. & A. 1937); Trust Company of N.J. v. Greenwood Cemetery, 21 N.J. Misc. 169 (Ch. 1943); Wehrle v. Pickering, 106 Colo. 134, 102 P.2d 737 (Sup. Ct. Colo. 1940); Hoff v. Armbruster, 242 P.2d 604 (Sup. Ct. Colo. 1952).
Applying the foregoing principles to the case at bar, we find the wills of Mr. and Mrs. Emley were prepared at one and the same time, by the same attorney, in the presence of both of them, and were executed simultaneously on December 22, 1950. Each of them contain unique mutual and reciprocal provisions in the second and third clauses of the respective wills dealing with the properties at Roscoe, New York, and at Highland Park, New Jersey; each gave the other a life estate in the residue and remainder of the estate of each other and each bequeathed and devised the remainder of the estate, after the death of the other spouse, to the respective children of each testator. In addition, they nominated the same persons, namely, one from each family, to be executors.
The two wills on their face bear evidence of an agreement between Mr. and Mrs. Emley to make mutual and reciprocal dispositions of their separate estates. It is not to be supposed that the detailed and unusual provisions contained in the second and third clauses of their respective wills could have been arrived at otherwise than by mutual agreement between them.
While in fact Mr. Emley predeceased his wife, the proofs established that she was suffering from cancer at the date of making the wills and that it was expected that she would die before her husband, in which event he as survivor would have succeeded to title to the Highland Park property. Notwithstanding, his will, as well as hers, made provisions that his wife's children by her former marriage should receive from that property the amount Mr. and Mrs. Emley deemed represented her share of the investment in that property.
It was stipulated at the trial that after Mr. Emley's death on June 5, 1951 his will was probated and Mrs. Emley *395 in her lifetime received under her husband's will the benefits provided in the fourth paragraph of his will. Having probated her husband's will and having accepted benefits thereunder, was she at liberty after his death to revoke her will and to make a new will for the benefit of her children alone, and to the exclusion of her husband's children, in violation of the mutual provisions contained in the two wills executed December 22, 1950?
It is clear from the testimony of attorney Morrison, who prepared the wills executed December 22, 1950, that the schemes contained in the two wills for the disposition of the property of both Mr. Emley and of Mrs. Emley had been worked out between them prior to the time they arrived at Mr. Morrison's office, and it is also clear that she acquiesced in that arrangement not only by her simultaneous execution of a will containing similar provisions as her husband's will, but also by the fact that she was present while her husband, Mr. Emley, gave instructions to attorney Morrison as to the manner in which the wills were to be prepared. In addition, within a few days thereafter, upon a visit by Mr. and Mrs. Emley to the home of Mrs. Adelaide Emley in Ocean City, N.J., Mary L.W. Emley informed her hostess that she and her husband had just been to a lawyer; had made out their wills; that they had each appointed as executors one of the children from each of the two families so that there would be no trouble, and in the presence of his wife Mr. Emley informed Adelaide Emley that the matter of the wills was now all fixed. Also at the time the wills were prepared by attorney Morrison, in response to the attorney's question as to how they had arrived at the percentages contained in the second and third clauses of the wills, Mr. Emley responded that "we have adjusted that between ourselves," and Mrs. Emley, who was present, by her silence and by the execution of her will containing substantially the same provisions as did her husband's will acquiesced in the statement that the matter had been adjusted between them.
While there is no direct proof of the existence of an express contract between Mr. and Mrs. Emley that their *396 mutual and reciprocal wills executed December 22, 1950 should remain irrevocable, yet the terms of the wills, the situation of the parties and of their respective families, the surrounding circumstances, and the statements made by both Mr. and Mrs. Emley at or about or shortly after the execution of the wills in question, strongly support the inference, which to me seems irresistible, that they both fully intended that their respective wills should make a final and irrevocable disposition of their respective estates. To paraphrase the language of Vice-Chancellor Backes in Tooker v. Vreeland, supra, Mrs. Emley having probated her husband's will and having accepted the benefits provided for her therein, became legally and in good conscience bound to carry out the obligation she undertook at the time of the execution of the mutual wills. Notwithstanding her obligation, however, with unseemly haste two days after the unexpected demise of her husband and on June 7, 1951 she executed a new will (a copy whereof is annexed to the complaint) by which she expressly revoked all former wills and bequeathed and devised her entire estate, including both the property at Roscoe, New York, and the home at Highland Park, N.J., to her four children to the total exclusion of the plaintiffs, the children of her deceased husband, Warren E. Emley, Sr. And notwithstanding the fact that Mrs. Emley within a very few days after the execution of the mutual wills on December 22, 1950 informed Mrs. Adelaide Emley at the latter's home in Ocean City that she and her husband had just had their wills made out and that they had each appointed as executors one of the children from each of the two families so that there would be no trouble, she nevertheless in her will of June 7, 1951 appointed her own son and her own daughter as executors of her will and ignored the arrangement made with her deceased husband that a member of each of the two families should be executors of the two wills.
Mrs. Emley's conduct in repudiating so soon after the death of her husband the solemn compact evidenced by the terms of the mutual wills executed December 22, 1950, while at the same time taking advantage of and receiving the benefits *397 provided for her in her husband's will, shows a shocking disregard of both her moral and legal obligation in the premises. Her conduct cannot be supported in a court of conscience.
As in Tooker v. Vreeland, supra, the consideration for the contract between Mr. and Mrs. Emley may readily be found in the inducement held out by the one to the other to mutually testate, and in the reciprocal gifts of the life estates and the performance of the contract by Mr. Emley by his unrevoked will, which was duly probated after his death. And in the acceptance and the actual enjoyment by Mrs. Emley of the gift (life estate) provided for her in her husband's will, we find that part performance which takes the oral contract out of the statute of frauds.
See also Annotation, 169 A.L.R., page 44.
Judgment will be entered in favor of the plaintiffs enforcing the contract between Mr. and Mrs. Emley by impressing a trust upon the assets in Mrs. Emley's estate, including the Highland Park, N.J., property, to carry out the terms of the mutual and reciprocal wills and, in that connection, for an accounting of the rents, issues and profits accruing since the death of Mrs. Emley.