28 N.J. Super. 593 (1953)
101 A.2d 26
LOUIS F. SELLYEI, EXECUTOR UNDER THE MUTUAL WILL OF EMIL LESCO AND MARY LESCO, PLAINTIFFS,
v.
STEPHEN LECSO, INDIVIDUALLY, AND AS EXECUTOR UNDER THE WILL OF MARY LESCO, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 8, 1953.
*596 Mr. Huyler E. Romond, appearing for plaintiff (Messrs. Toolan, Haney and Romond, attorneys).
Mr. David I. Stepacoff, attorney for defendants Stephen Lecso, individually and as executor under the will of Mary Lecso, and Gabriel Keszey.
Mr. John Papp, Jr., attorney for defendants-counter-claimants.
SCHETTINO, J.S.C.
Emil Lecso and Mary Lecso, his wife, executed a single instrument as their joint will on May 25, 1948. Emil died on January 15, 1950. The will was probated as to him on February 7, 1950, and plaintiff, Louis F. Sellyei, the executor therein named, duly qualified. Plaintiff's final account was approved and allowed, and distribution was made to Mary as provided in the will. On March 20, 1951 Mary executed another will. She died on April 2, 1951. On April 13, 1951 the joint will was probated as to her, and letters testamentary issued to plaintiff. In April 1951 Mary's will of March 20, 1951 was offered for probate and was so admitted on January 25, 1952, letters issuing to Stephen Lecso, the executor therein named.
The second will of Mary, although faithful in the main to the plan of distribution in the joint will, contained certain departures. These proceedings were instituted upon the hypothesis that Emil and Mary had contracted for the disposition of their earthly belongings and the second will of Mary breached the agreement. The relief sought includes a judgment restraining Stephen Lecso from acting under the second will and the impression of a trust to satisfy the *597 asserted contract. Plaintiff was appointed trustee to conserve the assets pendente lite, without any expression as to the ultimate merits.
For the reasons hereinafter expressed I am satisfied a contract was made by Emil and Mary. As I see the situation, the most important question relates to the terms of that contract. Before discussing those matters, I think it well to deal with issues advanced with respect to the legality of such contracts and their enforcement.
The resisting defendants urge that a contract to make an irrevocable will is invalid. The argument begins with the premise that a will in its very nature is ambulatory and revocable and a provision in a will that it shall not be revoked is ineffectual. 1 Williams on Wills (1952 ed.), p. 6; Schouler on Wills (6th ed.), sec. 326; Jarman on Wills (8th ed. 1951), p. 27; Thompson on Wills (3d ed. 1947), p. 28; 57 Am. Jur. Wills, sec. 458, p. 322. This premise is elementary and is not challenged by plaintiff. However, the proposition is confined to the subject of wills, as such, and does not militate against the validity or enforcement of a contract to make a specified disposition of property by will. The "power" to revoke a will or to execute another which infringes the contractual obligation is generally conceded, and the offending document will be admitted to probate; but the obligation will nonetheless be enforced, usually by a proceeding in the nature of specific performance whereby a trust is imposed upon the assets. Our cases uniformly recognize this principle, and at least where one party has died and the survivor has received the benefits in accordance with the agreement, its enforcement cannot now be questioned. Minogue v. Lipman, 25 N.J. Super. 376 (Ch. Div. 1953), affirmed 28 N.J. Super. 330 (App. Div. 1953); Sommers v. Zuck, 139 N.J. Eq. 245 (Ch. 1947); Trust Company of New Jersey v. Greenwood Cemetery, 21 N.J. Misc. 169 (Ch. 1943); Callahan v. Federal Trust Co., 126 N.J. Eq. 311 (E. & A. 1939); Howells v. Martin, 101 N.J. Eq. 275 (E. & A. 1927); Tooker v. Vreeland, 92 N.J. Eq. 340 (Ch. 1921), affirmed on opinion below in *598 Tooker v. Maple, 93 N.J. Eq. 224 (E. & A. 1921); Deseumeur v. Rondel, 76 N.J. Eq. 394 (Ch. 1909); cf. Eggers v. Anderson, 63 N.J. Eq. 264 (E. & A. 1901). This view is shared elsewhere. 169 A.L.R. 9; 57 Am. Jur., Wills, sec. 694 et seq. Contracts to make testamentary dispositions, if otherwise unobjectionable, offend no discernible public policy.
Nor does the aspect of revocability of a will prevent that instrument itself from serving as the vehicle for the expression of the contract of the parties. As a will it remains revocable in the sense stated above. The same writing remains, notwithstanding unilateral revocation of its testamentary role, as the contract between the parties where such it is, or in a given case as evidence of the contract where the contract is claimed to have been separately made.
It is also urged that the joint will passed complete title to the survivor (for present purposes that proposition may be accepted) and hence the provisions for disposition upon the death of the survivor are inoperative by reason of the common law rule that a gift over, after a bequest or devise of full ownership, is ineffective. In this connection reliance is placed upon Fox v. Snow, 6 N.J. 12 (1950), in which our Supreme Court divided as to whether that rule should be continued, and which prompted the enactment of chapter 325 of the Laws of 1951, effective as to wills of persons dying after January 1, 1952. N.J.S.A. 3A:3-16. That rule has never been understood to preclude contracts for mutual wills binding the survivor to a given disposition by will. This is evident from our own decisions which have recognized the validity of such contracts during the period when the common law rule referred to flourished with little or no criticism. With the serious question as to the soundness of that rule and the legislative expression just referred to, we would not be justified in extending the common law rule into an area which it never occupied, and this view in no sense is intended to suggest that retroactive effect is hereby given to the statute.
*599 We come then to the question, Was there a contract, and if so, what were its terms? That a contract was made is thoroughly clear from the opening passage of the joint will:
"We, Emil Lesco and Mary Lesco, husband and wife, of 752 Cortlandt Street, City of Perth Amboy, County of Middlesex and State of New Jersey, both being of sound mind and disposing memory and desiring to make disposition of our earthly affairs so that no contention may arise concerning the same when we or either of us be dead, so each mutually in consideration of the other making his or her will, and of the provisions made herein in each other's behalf, make this our last Will and Testament and agree that the same cannot be changed or varied by either without the consent in writing of the other."
The real issue in this case relates to the terms of that contract.
The resisting defendants contend that Emil and Mary intended to bind themselves only during their joint lives to insure to the survivor the benefits of their properties, and that the provisions for gifts upon the death of the survivor were beyond their contractual design. It is also urged that the other legatees and devisees were not intended to be third-party beneficiaries, but rather were only incidentally concerned. This contention made from the third-party beneficiary approach is, at least in the present case, merely another statement of the proposition that Emil and Mary intended to be bound only during their joint lives and intended the survivor to be free to make any testamentary disposition. If the contract were confined as the resisting defendants contend, it of course would follow that the other beneficiaries would have no basis for a claim. On the other hand, if the contract embraced the ultimate gifts in question, the rights of the beneficiaries would be clear. Hence the inquiry remains, what were the terms of the contract?
The scope of the contract must be ascertained without resort to rules of thumb. The situations of testators are so various that no other approach would be realistic. It is understandable that in some instances spouses would be concerned solely in protecting the survivor of them. In others, they may be concerned also with a fair distribution *600 to those of blood of the first to die. Countless possibilities may abstractly be conceived. The parties may intend to protect the kin of the first to die and yet not wish to burden the free will of the survivor with respect to the survivor's kin, or obligations which the survivor might later assume by reason, for example, of remarriage, or changes which might be indicated by mutations in the needs of the survivor's kin. These are some of the considerations which dictate the necessity for independent determination in each case, and needless to add, the need for extreme care in drafting contracts for mutual wills. See passim, Eagleton, Joint and Mutual Wills: Mutual Promises to Devise as a Means of Conveyancing 15 Cornell Law Q. 358 (1930). In ascertaining the contract, the situation of the parties and the surrounding circumstances may properly be considered as in the case of contracts generally. Casriel v. King, 2 N.J. 45 (1949).
The record consists substantially of the pleadings, of which the two wills are a part, and testimony that Mary received the benefit of the joint will upon the death of Emil. The wills disclose that some of the ultimate individual beneficiaries are members of the families of Emil and some of Mary, with Emil's kin predominating. Some of the property was in joint names of the decedents. It is alleged and denied that the properties were the fruit of the labors of Emil, but the resolution of that charge would not be decisive in this setting.
The resisting defendants emphasize the recital of consideration contained in the passage of the joint will quoted above, and appear to couple this emphasis with a claim that the absence of consideration from the ultimate beneficiaries negates a contract for their benefit. Consideration must be present to support the contract, but of course it need not move from the ultimate beneficiaries. The recital of consideration may be helpful in ascertaining the terms of the contract, but the rights of the ultimate beneficiaries do not depend upon the source of the consideration if the contract was intended to embrace them.
*601 I cannot find in the recital of consideration the restrictive influence which defendants urge. For convenience I repeat the language with pertinent emphasis:
"We, Emil Lesco and Mary Lesco, husband and wife, of 752 Cortlandt Street, City of Perth Amboy, County of Middlesex and State of New Jersey, both being of sound mind and disposing memory and desiring to make disposition of our earthly affairs so that no contention may arise concerning the same when we or either of us be dead, so each mutually in consideration of the other making his or her will, and of the provisions made herein in each other's behalf, make this our last Will and Testament and agree that the same cannot be changed or varied by either without the consent in writing of the other." (Emphasis added.)
Separately considered, the phrase "of the provisions made herein in each other's behalf" is susceptible of two interpretations. It could express a concern limited to the testators themselves. On the other hand, it lends itself to the view that testamentary gifts to the family of each testator were in mind as constituting provisions "in each other's behalf." Moreover that phrase is not the entire recital of consideration; it is preceded by the broad reference to "the other making his or her will." And overriding effect must here be given to the statement of the purpose of eliminating any contention "when we or either of us be dead." If their purpose were to contract solely for the benefit of the survivor, the appropriate language would have been in the vein of "when the first of us be dead." Hence the language indicates a design to deal contractually with the estate of the survivor.
This view is strongly supported by the Seventh paragraph of the joint will which reads:
"Seventh: It is the will and desire of each of us and our mutual desire that on the death of whichever one of us that survives the other, our estate, real, personal or mixed, of which the survivor may die seized or possessed, wheresoever situate, we hereby order and direct to be converted into money by our executor hereinafter named and for this purpose we do hereby authorize and empower said executor to bargain, sell and convey at public auction or private sale, and to make, execute and acknowledge all deeds, conveyances, cancellation or discharge of mortgages, bills of sale and other title *602 documents necessary in law for this purpose, and the said properties to be sold, all outstanding moneys to be collected on mortgages, as soon as the same can be done, without sacrifice, in the discretion of said executor; and when said residuary estate shall have been converted into money as aforesaid, we do hereby order and direct that the same shall be distributed by our said executor, in the following manner, that is to say: * * *."
I cannot reconcile the "will and desire" (the word "desire" is not precatory in this context) "on the death of whichever one of us that survives the other," and the order and direction for sale and distribution, with the view that the contract was intended to be fully performed upon the death of the first of the testators. On the contrary, I think it plainly means that the parties contracted for the plan of disposition there provided for upon the death of the survivor. This view is further supported by the Tenth paragraph which provides:
"Tenth: After the death of the survivor of either of us, if any of the legatees named in the foregoing clauses are not living, then the sums which would have belonged to such legatees, if living, shall become a part of the residue of our estate." (Emphasis added.)
I have not overlooked the language of the Second and Third paragraphs. Both deal with specific real property and conclude that the lands (Third paragraph):
"* * * we own, not as tenants in common, but jointly as an estate by the entirety, hereby devising said land of the one of us who may die first to the survivor during his or her natural life." (Emphasis added.)
This language is paralleled in the Fourth paragraph, which deals with various kinds of personalty and "all other property of the deceased party whether real, personal or mixed," and provides that the same
"* * * shall become the sole and separate property of the surviving party for her or his use so long as the survivor shall live." (Emphasis added.)
These provisions do not indicate the parties were contractually concerned only with the welfare of the survivor. In *603 the light of the entire will, they were designed to implement the theme of full enjoyment by the survivor of the entire estate, subject to the plan for distribution upon the survivor's death set forth in the Seventh paragraph.
It is also urged that a contract should not be found or if found, should not be here enforced, because of an alleged ambiguity. The ambiguity is claimed to repose in the language of the Second, Third and Fourth paragraphs, quoted above, and that ambiguity, as I understand it, is said to be an uncertainty as to the nature of the estate devised and bequeathed to the survivor. That ambiguity, if there is one, does not relate to the terms of the contract here involved. It does not in any way obscure the contractual obligation to devise and bequeath the estate of the survivor in accordance with provisions of the will. Whatever the interest taken by the survivor, the contract to dispose of the entire estate of the survivor is clear, namely, that whatever should remain upon the death of the survivor must be distributed in accordance with the specified plan.
The beneficiaries under the joint will are entitled to have a trust impressed upon the estate of Mary and to have the estate distributed in accordance with the joint will. As stated above, the probate of Mary's second will is not to be disturbed, and it follows that the probate of the joint will as to Mary is ineffectual. The administration of Mary's estate shall be completed by defendant, Stephen Lecso as executor, except with respect to distribution to beneficiaries since the net proceeds remaining are subject to the trust.
These conclusions raise a problem as to the status of the plaintiff to maintain this action. It may be doubted that the contract of Emil and Mary embraced an immutable covenant for plaintiff's benefit that he be executor of the survivor's estate or that a covenant to that effect would be enforced. In short, had Mary by codicil to the joint will substituted another as executor, it is questionable whether plaintiff could be heard to complain in his own interest, Carton v. Borden, 8 N.J. 352, 356 (1951). Whether the contract operated to constitute plaintiff the representative *604 of the beneficiaries to enforce their rights need not be determined. Plaintiff's letters as executor for Mary under the joint will appear not to have been revoked, and since the parties have joined in the litigation of the meritorious issues and a counterclaim was filed by some of the defendants praying for a declaration of their rights under both wills, we need not be delayed by this interesting question.
The remaining issue is whether a trustee should be appointed, and if so, who the trustee should be. The plan for distribution would be more readily executed by a trustee than by a judgment which undertook itself to make distribution directly. It appears that the residence of some of the beneficiaries would make appropriate an application for instructions with respect to payment in the light of the present international picture. Hence there should be a trustee, and since plaintiff is now so acting under the temporary order referred to above, he will be continued in that capacity. Upon completion of his duties as executor referred to above, Stephen Lecso will transfer the remaining assets to the trustee.
All parties were justified in advancing their positions. Applications for allowances should be made when the judgment is presented for signature on notice. Affidavits of services will be required.
In view of the different spellings of the decedents' last name, the judgment will recite both spellings.