JOHN DREWEN, ADMINISTRATOR *CUM TESTAMENTO ANNEXO* OF THE ESTATE OF DORIS RYER NIXON, DECEASED, PLAINTIFF-APPELLANT, v. BANK OF THE MANHATTAN COMPANY OF THE CITY OF NEW YORK, EXECUTOR AND TRUSTEE OF THE LAST WILL AND TESTAMENT OF STANHOPE WOOD NIXON, DEFENDANT-RESPONDENT.

Argued September 29, 1959—Decided November 10, 1959.

112

*Mr. John R. Kelly* argued the cause for the plaintiff-appellant.

*Mr. Douglas M. Hicks* argued the cause for the defendant-respondent (*Messrs. Hicks, Kuhlthau, Molineux & Nagle,* attorneys; *Mr. Joseph M. Kraft* on the brief).

The opinion of the court was delivered by

PROCTOR, J.   This suit was brought in the Superior Court, Chancery Division, by John Drewen, administrator *c. t. a.* of the estate of Doris Ryer Nixon, to enforce a contract executed by the plaintiff's decedent and her husband, Stanhope Wood Nixon, the defendant's decedent. On motion addressed to the complaint, the Chancery Division dismissed the administrator's suit, and the dismissal was affirmed by the Appellate Division. 55 *N. J. Super.* 331 (1959). Certification was granted. 30 *N. J.* 154 (1959).

The complaint sets forth the following allegations: Doris Ryer Nixon and Stanhope Wood Nixon were married in 1917. They had two children, Lewis and Blanche. On July 27, 1945 the husband and wife executed an agreement settling the rights of each in the other's property in contemplation of a divorce which was granted some months later. As part of that agreement, Stanhope Wood Nixon promised never to reduce the quantity or quality of the children's interests in his estate, as set forth in a will executed

on the same day as the agreement. By that will, each child was to receive about 30% of Nixon's estate in fee. If one child were to predecease the testator without leaving issue, the surviving child would take the other's share.

In 1948 Doris Ryer Nixon died testate in California. An executor was appointed there and undertook the administration of her estate. In 1951 Stanhope Wood Nixon executed a new will, which revoked his 1945 will, changed the outright gifts to his children to life estates, with life estates over to surviving issue and, finally, remainders to charities. The will also contained an *in terrorem* clause which would void the bequests made to any one who should "directly or indirectly * * * call in question before any tribunal the provisions of any legacy, devise or provision herein, * * *." The daughter, Blanche, died in 1955 without issue, and the son, Lewis, survived and succeeded to her share under either of the father's wills. Stanhope Wood Nixon died in 1958, and his 1951 will was admitted to probate by the Surrogate of Middlesex County. The defendant is the executor and trustee under that will.

In 1958 the California executor of Doris Ryer Nixon's estate renounced in favor of the plaintiff, who obtained letters of administration *c. t. a.* from the Surrogate of Hudson County for the sole purpose of prosecuting this suit. Lewis Nixon was aware of the appointment of the plaintiff as administrator *c. t. a.*, and of the institution of this suit. He has offered no objection, doubtless because of the *in terrorem* clause.

Plaintiff in this action seeks judgment declaring that the 1945 agreement is binding on the estate of Stanhope Wood Nixon; that his executor be directed to administer the estate and make distribution thereof in conformity with that agreement, and that the 1951 will be reformed accordingly. In essence, the plaintiff seeks specific performance of the 1945 agreement.

The Chancery Division dismissed the complaint on the ground that the administrator *c. t. a.* had no standing to

prosecute the suit, since no benefit could accrue from it to the estate. The Appellate Division affirmed, holding that "[a]s administrator with the will annexed, he has shown no right, power or duty to maintain this action." 55 *N. J. Super.* at *page* 336.

On this appeal plaintiff contends that his decedent, Doris Ryer Nixon, had in her lifetime a sufficient interest as promisee of the contract to enforce it, and that upon her death her right passed to her California executor and in turn to the plaintiff. On the other hand, the defendant contends that the only rights passing to her personal representatives are those whose enforcement would result in the realization of assets for distribution to the creditors and beneficiaries of her estate. It urges that the rights of Lewis Nixon belong to him as third party beneficiary of the 1945 contract, and not as beneficiary of the estate of Doris Ryer Nixon, and that under *N. J. S.* 2A:15-2 he has the right to enforce the contract, and is capable of instituting the necessary suit himself. Furthermore, it argues that if Stanhope Wood Nixon breached the contract, he did so at his death, which was after the death of plaintiff's decedent; no cause of action accrued to plaintiff's decedent during her lifetime and therefore none passed to the plaintiff.

It is beyond question that a person may bind himself by contract to make a particular will. *Epstein v. Fleck,* 141 *N. J. Eq.* 486 (*E. & A.* 1948). It is equally clear that Lewis Nixon, the third party beneficiary of the 1945 contract, could have maintained a suit for specific performance. *Di Girolamo v. Di Matteo,* 108 *N. J. Eq.* 592 (*Ch.* 1931); *Hendershot v. Hendershot,* 135 *N. J. Eq.* 232 (*Ch.* 1944); *Hufnagel v. Scholp,* 138 *N. J. Eq.* 16 (*Ch.* 1946). Our courts have long recognized the right of a third party beneficiary to enforce a simple contract. *Joslin v. New Jersey Car Spring Co.,* 36 *N. J. L.* 141 (*Sup. Ct.* 1873). *N. J. S.* 2A:15-2 is declaratory of that rule and extends it to cover contracts under seal. *Borough of Brooklawn v. Brooklawn Housing Corp.,* 124 *N. J. L.* 73 at *pages* 75-76 (*E. & A.*

1940). However, the statute is merely permissive and does not exclude the rights of other parties to the contract. See *Holt v. United Security Life Ins. Co.*, 76 *N. J. L.* 585 at *page* 590 (*E. & A.* 1909).

A promisee of a contract for the benefit of a third party donee has a sufficient interest in the enforcement of the promise to entitle him to sue for damages. *Restatement, Contracts,* § 135(*b*) (1932); see also *O'Neill v. Supreme Council, Am. L. of Honor,* 70 *N. J. L.* 410 (*Sup. Ct.* 1904). He may also invoke the aid of a court of equity, for the general reason that his remedy at law is inadequate, and he should not be denied an effective means of compelling fulfillment of a promise that he bought and paid for. *Croker v. New York Trust Co.,* 245 *N. Y.* 17, 156 *N. E.* 81 (*Ct. App.* 1927); *In re Book's Estate,* 297 *Pa.* 543, 147 *A.* 608 (1929); *Restatement, Contracts,* § 138; 5 *Corbin, Contracts,* § 1154 *p.* 672 (1951); Note, 41 *Harv. L. Rev.* 97 (1927). In the case of a suit on a contract to make a will, there is the additional reason that breach of such a contract is deemed to be a fraud against which equity will afford relief. See *Hendershot v. Hendershot, supra; Minogue v. Lipman,* 25 *N. J. Super.* 376 at *page* 392 (*Ch. Div.* 1953), affirmed 28 *N. J. Super.* 330 (*App. Div.* 1953).

It is apparent from the above that had the 1945 contract been breached during the lifetime of Doris Ryer Nixon she would have had the right to equitable relief. The question for our determination is whether this right passed to the plaintiff as administrator *c. t. a.* of her estate. The regularity of the appointment of the plaintiff as such administrator is not questioned, and the parties and both courts below are in agreement that his powers are set forth in *N. J. S.* 3*A* :6–46, which provides:

"A substituted administrator with or without the will annexed shall be entitled to demand and receive the whole of the personal estate of his decedent, except such portion thereof as shall have been properly and justly paid out and distributed. He may sue for and recover all such assets, or their equivalent whether legal or equitable,

from any person, his heirs or personal representatives, chargeable therewith, and in like manner charge his predecessor in office for any breach of trust or maladministration and shall in any such litigation represent the creditors and all persons beneficially interested in the estate.

Such substituted administrator shall have generally all the rights and powers and be subject to the same duties and liabilities as the original executor or administrator, but no substituted administrator with the will annexed shall exercise any powers of sale as to real estate conferred by the will upon the executor as such or upon the executor as trustee except as authorized by section 34:16–10 of this title."

This statute does not confine the administrator *c. l. a.* to the recovery of assets to be distributed through his decedent's estate. It also confers upon him all the rights and powers, and subjects him to the same duties and liabilities as are generally given and imposed upon an original executor or administrator, with limitations not here pertinent.

█ The general rule is that a right of action founded upon a contract survives the person entitled in his lifetime to sue, so that the right passes upon his death to his personal representative. *Schouler, Executors,* § 277 (*3d ed.* 1901). As early as 1646 it was held that the personal representative of a promisee of a contract made exclusively for the benefit of a third party donee could sue for the breach of that contract even though the donee beneficiary could also sue. The case was reported by William Style as (*Anon.*) *Style* 6, 82 *Eng. Rep.* 487 (*K. B.* 1646):

"I. assumes and promiseth to B. that if B. will pay 50l. to C. his son, who was maried to D. the daughter of I. at such a time, that he will pay 100l. to D. his daughter at such a time; B. pays the 50l. to C. at the time appointed, I. fails in payment of the 100l. according as was agreed; B. dies intestate, and E. administers, and brings an action upon the case against I. upon this promise made to B. the testator; and adjudged that the action did well lie by the administrator, though he should receive no benefit if he did recover."

And in *Bafeild v. Collard, Aleyn* 1, 82 *Eng. Rep.* 882 (*K. B.* 1646), after reciting substantially the same facts (it may be the same case), another reporter has it:

"* * * and upon *non assumpsit* it was found for the plaintiff: and Maynard moved that the action ought to have been brought by the daughter, for it has been adjudged that it lieth for her upon such a promise, and so the defendant should otherwise be doubly charged; but upon good debate, judgment was given for the plaintiff, for the consideration moved from the intestate, and the promise was made to him, yet it was agreed that it might be brought by the daughter; * * *."

See 1 *Williams, Executors and Administrators*, § 598 (13th ed., *Parry*, 1953).

In *Catland v. Hoyt*, 78 *Me*. 355, 5 *A*. 775 (*Sup. Jud. Ct.* 1886), it was held that the executor had standing to sue the beneficiary of an insurance policy on the life of the decedent for failure to perform a contract with the decedent to pay over part of the proceeds of the policy to third party donees. The court noted a conflict in the authorities whether the third party donees could maintain suit, but had no doubt that the promisee's executor could do so.

Similarly, in *Waxelbaum v. Carroll*, 58 *Ga. App.* 771, 199 *S. E.* 858 (*Ct. App.* 1938) the plaintiff administrator sued to enforce a contract entered into by his decedent for the benefit of a third party donee. The beneficiary herself had originally sued the promisor, and a demurrer to her complaint had been sustained on the basis of a statute barring contract suits by third party donees. The promisee's administrator was held to have standing to sue. The court said:

"[Decedent] was a party to the contract, furnished the consideration for it, was the promisee therein, and had a direct legal interest in it; and our view is that George Carroll, as administrator of his estate, was the proper party to bring the present action. * * *" (199 *S. E.* at *page* 860.)

The defendant seeks to avoid the impact of these two cases by pointing out that in Maine and Georgia third party donees had no standing to enforce contracts for their benefit, but that in New Jersey they have. The defendant urges that therefore this court need not find a cause of action in the promisee's personal representative, as the Maine and Georgia Courts did, in order to avoid an inequitable result.

■ But, the question is purely one of a personal representative's power to act. If the administrator or executor has standing, he gets it from the nature of his role as personal representative of the deceased, and not from a lack of capacity in some one else. If the right to enforce the contract passes to him on his decedent's death, it does so because of the relationship between him and his decedent. It is irrelevant that some one else may or may not have a cause of action on the contract. In the English authorities cited above the personal representative had standing to sue even though the beneficiary might have also maintained an action. Also, the illustration following *section. 135* of the *Restatement of Contracts* recognizes that the interest of the promisee in the performance of the contract, which during his life is concurrent with that of the donee beneficiary, passes to his personal representative at death:

"A gives money to B, his son, who promises in consideration thereof to pay A's daughter, C, $5,000 on A's death. A dies and B fails to pay C. C may sue on the promise and obtain judgment for $5000. A's executor also may sue."

The defendant asserts that the present case is analogous to three factual situations in which he suggests personal representatives are denied standing to sue. The first is where the personal representative seeks to enforce his decedent's *inter vivos* or testamentary trust. *First Camden National Bank & Trust Co. v. Hiram Lodge No. 81,* 134 *N. J. Eq.* 303 (*Ch.* 1944), affirmed on opinion below, 135 *N. J. Eq.* 505 (*E. & A.* 1944). The second is where the decedent was the insured under a policy of life insurance payable to a beneficiary other than his estate, and the personal representative sues for the proceeds thereof. *Bomash v. Supreme Sitting of the Order of the Iron Hall,* 42 *Minn.* 241, 44 *N. W.* 12 (*Sup. Ct.* 1889) ; *Bell v. Goodwin,* 220 *Ala.* 537, 126 *So.* 108 (*Sup. Ct.* 1929) ; *Schoep v. Bankers' Alliance Insurance Co.,* 104 *Iowa* 354, 73 *N. W.* 825 (*Sup. Ct.* 1898). The third is where the personal rep-

resentative seeks to enforce covenants running with land owned by the decedent and passing to his devisees or heirs at law. *United New Jersey R. & Canal Co. v. Hoppock,* 28 *N. J. Eq.* 261 (*E. & A.* 1877).

The above situations are readily distinguishable from the present case, and the rules governing them have no application here. If the administrator of the estate of a trust settlor may not enforce the trust, it is because the settlor during his life could not have done so. *Restatement, Trusts,* §§ 200, 391 (1935); 2 *Scott, Trusts,* § 200.1, 4 *Id.* § 391 (*2d ed.* 1956). The insurance cases cited by the defendant merely hold that the personal representative of the deceased insured may not sue to collect for his estate proceeds due the beneficiary named in the policy. Those cases would apply only if the plaintiff here were attempting to collect the amount due Lewis Nixon to distribute them as part of Doris Ryer Nixon's estate. See *Restatement, Contracts,* § 345(1), Illustration 1. The covenant case is distinguishable, as the defendant concedes in his brief, "because the law of real covenants rather than of administration of decedent's (sic) estates is [its] theoretical basis."

The defendant argues that the plaintiff's decedent could not have sued during her lifetime since the contract had not yet been breached, and that therefore no cause of action could have passed to the plaintiff. We do not agree. Assuming that the breach occurred only upon the death of Stanhope Wood Nixon, see *Galloway v. Eichells,* 1 *N. J. Super.* 584 (*Ch. Div.* 1948), and that his wife, the plaintiff's decedent, could not have sued before that time, it does not follow that her personal representative cannot now maintain suit.

It is not unusual that at death a decedent owns contract rights that he could not have enforced while alive. Such is the case when he holds an unmatured promissory note or an account not then payable. If the note falls due or the account becomes payable during the administration of the estate, however, an action may be prosecuted by his personal representative despite the fact that during the life

of the decedent it could not have been. It is not only a fully ripened cause of action that passes upon death. It may also be a right to enforce, *in futuro*, a contract whose duties of performance survive the death. Otherwise, it would be an empty thing to speak of contracts that survive death. They survive only if they may be enforced by the decedent's personal representative. If, therefore, the plaintiff could have enforced the contract by adopting a cause of action available to his decedent during her life, it does not matter that the occasion for enforcement arose after her death. *Cf. Thompson v. Van Hise,* 133 *N. J. L.* 524 (*Sup. Ct.* 1946).

The defendant cites *Neal v. Neal,* 250 *F.* 2d 885 (10 *Cir.* 1957) to the contrary. That case does contain language which, out of context, supports the defendant's argument. But the holding there was not that the plaintiff administratrix was barred because her decedent's cause of action had not ripened before his death. She was barred because the decedent, having predeceased his mother, who had agreed to make a will in favor of surviving children, did not come within the terms of the agreement. The proposition advanced by the court is thus an elementary one—if a decedent did not have a cause of action, neither does his administratrix.

The defendant argues that to allow the present suit opens the door to litigation in the name of an estate which can be of no benefit to its creditors and beneficiaries, and which can only deplete the estate with costs of administration. It further argues that such a holding opens a whole new area of unknown fiduciary duties, which it is unreasonable to impose upon an executor or administrator.

We cannot agree. We do not hold that the plaintiff, in the circumstances of this case, had a duty to enforce the contract his decedent made for the benefit of a third party donee. We merely hold that he had the power to do so. As in all areas of fiduciary administration, a decedent's personal representative is guided by a rule of reason. He must act with the diligence, prudence and caution of a reasonable man, *In re Cross' Estate,* 117 *N. J. Eq.* 429 (*E. & A.* 1935),

and in the expenditure of estate funds he must abide by the principle that he primarily acts in the interest of creditors and beneficiaries.

In the present case, no beneficiary or creditor of the estate of Doris Ryer Nixon has objected to the prosecution of this suit. Under other circumstances, it might properly be held that such an objection or the possibility of such an objection should deter undertaking such a suit, unless assurance can be made that the estate will in no way be depleted by it. *Cf. Smith v. Jones,* 89 *N. J. Eq.* 502 (*Prerog.* 1918). But it does not lie in the mouth of the defendant to complain of the prosecution of the plaintiff's claim by asserting the rights of others who choose not to assert those rights themselves.

We are not aware of any policy that would be violated by the maintenance of an action by the personal representative of a deceased promisee to enforce a third party beneficiary contract. Indeed, if any policy has a place in our decision it is that policy which favors the enforcement of promises for which valuable consideration has been received.

For the reasons stated above, we hold that the plaintiff was empowered by *N. J. S.* 3*A*:6–46 to prosecute the present action. The judgment of the Appellate Division dismissing the complaint is therefore reversed.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance*—Justices BURLING and HALL—2.