William L. Adams, Julia M. Adams and Mildred Meade, Plaintiffs-Appellants, v. Charles A. Hoshauer, as Administrator of the Estate of Odessa Villars Adams, Deceased, et al., Defendants-Appellees.

## Gen. No. 10,305.

### Third District.

### February 21, 1961.

3

Stifler & Snyder, by Carroll E. Snyder, and Bookwalter, Carter, Gunn & Hickman, by Horace E. Gunn, of Danville, for appellants.

Hutton, Hegeler, Bates & Buchanan, and Acton, Baldwin, Bookwalter & Meyer, of Danville, for appellees.

ROETH, JUSTICE.

Plaintiffs brought this suit against the administrator of the estate of Odessa Adams and her heirs to have $30,000.00 in cash held by the administrator impressed with a trust in favor of plaintiffs or to declare such sum to be the property of plaintiffs by reason of a gift from the deceased.

In 1957, Charles G. Adams died intestate, leaving as his only heirs, his wife, Odessa, two of the plaintiffs herein, and other persons not parties to this suit. The assets in his estate included a farm that passed ½ to Odessa and ½ to his other heirs, who were brothers and sisters and certain descendants of deceased brothers and sisters. By agreement of the heirs the farm was placed in the hands of an attorney for sale, with the understanding that the cash received was to be divided ½ to Odessa and the other ½ among the other heirs of Charles Adams. It was sold for $68,-

4

000.00, but before the funds, at least Odessa's share, could be transferred to her, she died. From the testimony it appears that Odessa had on several occasions advised plaintiffs of her wish that they receive the funds inherited by her from her husband's estate, after her death, at one time expressing the feeling that this property should pass to her husband's side of the family.

Approximately 5 days before her death she went to the hospital for an operation which was performed on the 21st of August 1958. Plaintiffs William Adams and Julia Adams, his wife, were with her on the 21st. A nurse who was present at the time testified she heard Odessa say she wished Bill and Julia Adams, two of the plaintiffs, to have $20,000.00 and Mildred Meade, the other plaintiff, to have $10,000.00. William Adams then prepared a paper, in longhand, that was signed in the presence of two witnesses. One witness signed in the presence of Odessa but the other did not sign it until after the operation, several hours later and out of the presence of Odessa and the other witnesses. The instrument so executed read as follows:

"Lakeview Hospital
Danville, Ill.
August 21, 1958.

To Whom it may Concern:

It is my desire that United States Savings Bonds, Series H, be purchased from my personal cash in the amount of Thirty Thousand Dollars ($30,000), and to show myself, Odessa V. Adams, as owner and first beneficiary of said Bonds, and to show as second owners and beneficiaries of said Bonds—divided in this manner:

Mildred Meade, R.F.D. #1, Alvin, Illinois, in the amount of Ten Thousand Dollars ($10,000); and

5

William L. Adams and Julia M. Adams (husband and wife jointly) 1210 Sheridan, Danville, Ill., in the amount of Twenty Thousand Dollars ($20,-000).

Signed Odessa Villars Adams
 1314 N. Gilbert St.,
 Danville, Illinois.

Witnessed by:

 Mrs. E. O. Kerby
 516 Lafayette St.,
 Lillian Reynolds
 210 Brentwood
 Tilton, Ill."

The instrument was given to plaintiff William Adams, but obviously the "desire" of decedent to purchase bonds was not carried out. The other witness testified Odessa told her she was going to have "Bill make up a paper as to some of her wishes" and that she told Bill Adams, "You don't need this, and neither do the others but I want you to have it."

It appears from the evidence that in addition to the amount held by the attorney, Odessa had substantial other funds to purchase $30,000.00 of bonds. At the time the instrument was executed, the attorney holding the funds from the sale of real estate was out of the state and he did not return. He died on the same date Odessa passed away. It also appears that Odessa had remarked on several occasions her preference for the plaintiffs over her heirs and even the preference of her husband's heirs over her own as beneficiaries of so much of her estate as she obtained from her late husband.

The lower court found for the defendants, holding the instrument, as well as the other evidence, failed to establish either a trust or a gift to the plaintiffs.

Plaintiffs contend that the intention and desire of the deceased to benefit plaintiffs as expressed in the

6

instrument executed and delivered by her, should be carried into effect as a voluntary trust in their favor.

Plaintiffs stress that all deceased was required to do was express her intent to create a trust and contend that she did so amply. We cannot agree that she in fact intended a trust. That she wishes plaintiffs to benefit from her estate to the extent of $30,-000.00 is fairly clear, but only after her death. Her statements of desire all pointed to the use of all her assets until her death. While we agree it is immaterial whether the settlor knows the relationship he intends to create is called a trust, as plaintiffs contend, we feel it imperative that what the settlor create be a trust, before the court so labels it. In short, the courts cannot and should not conclude that every good intention to bestow gifts is a trust, for to do so would confound the law and lead not only to injustice in many cases but to endless litigation.

 In Harris Trust & Savings Bank v. Morse, 238 Ill. App. 232, the court laid down certain principles applicable to voluntary trusts. They are applicable here. The court said:

> "It is conceded by counsel that a court of equity may establish and enforce a voluntary oral trust concerning personal property. The authorities hold, however, that 'the acts or words relied on must be unequivocal, admitting of but one interpretation, and manifesting a completed transaction in praesenti' (Trubey v. Pease, 240 Ill. 513, 521); and that the proof of such acts or words must be clear and convincing proof, not only of the existence of the trust, but also as to its essential terms and conditions. (39 Cyc. 84; Wright v. Buchanan, 287 Ill. 468, 478; Marble v. Marble's Estate, 304 Ill. 229, 235; 1 Perry on Trusts, 2d Ed., sec. 23.) Such a trust is not created where there is a mere intention to create it, or a volun-

7

tary agreement to do so, and the settler contemplates some further act for the purpose of giving it completion. (Lloyd v. Brooks, 34 Md. 27, 33; Lewin on Trusts, 12th Ed., sec. 71.) 'Declarations of a purpose to create a trust not carried out are of no value, nor are direct promises to that effect unaccompanied with considerations turning them into contracts.' (Allen v. Withrow, 110 U.S. 119, 130.) 'If a trust is perfectly created, so that the donor or the settler has nothing more to do, and the person seeking to enforce it has need of no further conveyances from the settler, and nothing is required of the court but to give effect to the trust as an executed trust, it will be carried into effect, although it was without consideration. . . . But if, on the other hand, the transaction is incomplete, and its final completion is asked in equity, the court will not interpose to perfect the settler's liability, without first inquiring into the origin of the claim and the nature of the consideration given.' (Barnum v. Reed, 136 Ill. 388, 400.) 'Where there is only a voluntary agreement for the creation of a trust, a court of equity will not regard the agreement as binding so long as it remains executory.' (McCartney v. Ridgway, 160 Ill. 129, 155)."

The evidence is not clear and convincing that the decedent directed any specific person to purchase the bonds or whether the funds in the hands of the attorney from the sale of the farm or other funds which she had were to be used to make the purchase. The instrument is not aided by other testimony and alone it does not "manifest a complete transaction in praesenti." The instrument does not contemplate the transfer of any interest, legal or equitable, in the "personal cash" but an interest in certain bonds to be purchased. The instrument clearly contemplates a

8

further act to make it complete. The trust, if the decedent so intended one, was to be created in the bonds, subject to revocation. The instrument falls short in every instance to qualify as a trust. The delivery of the instrument to the plaintiffs is of no help. If we assume that it was directed to the attorney holding $34,000 of her funds, thus making it more complete, it is still executory in nature for surely it contemplates the purchase of the bonds. Even after such purchase no beneficial interest would pass to plaintiffs until after the death of Odessa Adams. She would retain full control and possession of the bonds and had she lived it is possible she may have converted them to cash and used the same for her own purpose.

█ Plaintiff's next contend that this was a gift of an asset of the donor in the custody of a third person and that the delivery of the instrument in question to one of the plaintiffs completed the gift. We are less inclined to accept this theory than the previous one. It immediately poses the questions, what assets and what third person? Neither the instrument itself nor the instrument aided by the testimony answers either question. The testimony tends to suggest the funds in the hands of her attorneys. But again, what was delivered to plaintiffs by the decedent? To create a gift inter vivos, it is essential that it be irrevocably effective at once. Whaley's Estate, 3 Ill.App.2d 333, 122 N.E.2d 46. A gift inter vivos must be an absolute irrevocable transfer at once. The giver must part with all present and future dominion over the property, and there must be such a change of possession as to put it beyond the donor's power to repossess. Pocius v. Fleck, 13 Ill.2d 420, 150 N.E.2d 106; People v. Csontos, 275 Ill. 402, 114 N. E. 123; Williams v. Anderson, 288 Ill. App. 149, 5 N.E.2d 593; Hopkins v. Hughes, 340 Ill. 604, 173 N. E. 100. To constitute a valid gift

9

there must be an intent to pass, and an intent to accept title to the subject of the gift, whereupon all right to possession, use and disposal of the subject passes to the donee. Moore v. Moore, 237 Ill. App. 190. In these respects the case of Northern Trust Company v. Swartz, 309 Ill. 586, 141 N. E. 433, is clearly distinguishable from a factual standpoint.

■ ■ In the case at bar, the bonds and not the cash were the contemplated gift, but even if we should hold otherwise, it is clear no present gift was anticipated by Odessa Adams. By the words of the instrument, she anticipated keeping full ownership of the property and that plaintiffs should be named as second owners or beneficiaries. No attempt was made to explain the meaning of second owners or beneficiaries. The testimony by plaintiffs' witness indicates she contemplated and meant only that plaintiffs take the property after her death. Had she lived she could have revoked the effect of this instrument by either refusing to invest in the bonds or if that had been accomplished, disposed of the bonds at her pleasure.

For the reasons stated herein the judgment of the trial court is affirmed.

Affirmed.

CARROLL, P. J. and REYNOLDS, J., concur.