Fred D. PITT and E. H. McVey, Trustees of the Estate of William P. Pitt, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 12777-1-3.

United States District Court
W. D. Missouri, W. D.
Aug. 13, 1962.

As Amended Nov. 2, 1962.

Wm. E. Kemp, of Kemp, Koontz, Clagett & Norquist, Kansas City, Mo., for plaintiffs.

F. Russell Millin, U. S. Atty., and Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Harold S. Larsen, Harvey G. Schneider, Attorneys, Department of Justice, Washington, D. C., for defendant.

DUNCAN, J.

This action was instituted by the plaintiffs in two counts under §§ 1340–1346(a) (1) Title 28 U.S.C.A. against the defendant to recover the sum of $43,043.73 with interest thereon from July 29, 1959, as a refund of income taxes alleged to have been improperly and illegally collected by the defendant for the year 1954, and the sum of $7,759.54 with interest from July 29, 1959, as a refund of income taxes alleged to have been improperly and illegally collected by the defendant for the year 1955.

The case is before this court on Stipulation of Facts and testimony offered by the plaintiffs concerning the circumstances under which the trust estate upon which the tax was levied, was created, and the value of the securities in the hands of the deceased, William P. Pitt, at the time of the execution of the will creating the trust. Defendant offered no testimony and there is no dispute as to the facts, and the court's findings are as follows:

On October 28, 1926, William P. Pitt transferred his estate to the Fidelity National Bank and Trust Company, in trust, for investment and reinvestment, subject to his approval.

On November 19, 1930, the Fidelity Bank, Trustee, with Pitt's approval, entered into contracts for loaning money to a new corporation (Twenty One West Tenth Street Building Co.) for construction of an office building at Tenth and Baltimore in Kansas City, Missouri, carrying 6% interest from date of advancement. The "Twenty One Co." was incorporated October 17, 1930, by Pitt and Joseph A. Bruening with a capital stock of $10,000.00 divided equally.

The Fidelity Bank, Trustee, borrowed the money for the advancements from itself, the Fidelity Bank, on notes with interest signed by Fidelity Bank, Trustee, and by Pitt. The Fidelity Bank, Trustee, loaned to the Twenty One Co. for construction costs under the above mentioned contracts, the sum of $328,484.60, and in addition, paid $5,000.00 for the capital stock. No payment was ever made on the principal amount of these advances.

The investment was unprofitable during the next several years and a reorganization was agreed upon resulting in the incorporation of Insurance Exchange Building, Inc., on February 27, 1943. Title to the office building was conveyed to the new company subject to all indebtedness including the contract debt owing Pitt.

On March 1, 1943, the above mentioned debt with accumulated interest amounted to $519,616.22. At approximately the same time the trust to the Fidelity Bank was revoked and the trust estate returned to Pitt, and thereupon ᴸ ᴬtt exchanged the said indebtedness, owing him for $217,-000.00 in notes of Insurance Exchange Building, Inc., and 200 shares of its capital stock, whereupon the Pitt indebtedness was cancelled.

Included among the assets of the terminated trust were $20,000.00 face value bonds of Tokyo Electric Light and Power Company, which at this time had no value due to a state of war existing between the United States and Japan.

Marital difficulties existed between Mr. and Mrs. Pitt for many years prior to his death, and the parties had separated. Mr. Pitt had moved to New Jersey in 1937, and although Mrs. Pitt once consulted a lawyer about the possibility of a divorce after the separation, she abandoned plans for a divorce and never pursued the matter further.

Shortly before June 20, 1947, Mrs. Pitt became fearful that in the distribution of his estate Pitt would exclude their

two daughters from his will, and with this in mind, some negotiations were instituted between her and her husband which resulted in a conference which took place prior to June 20, 1947.

Mrs. Pitt's request was that their children should share equally with Pitt's children by a former marriage; she did not request that any specific amount be settled upon them. Pitt agreed to make a will, which Mrs. Pitt contended was to be irrevocable, with the specific provisions for his wife and for their two children, and for his daughter Mildred. He suggested a specific amount of $75,000.00 to be shared equally by them before the son Fred D. Pitt should share in the estate. The evidence reveals that Fred D. Pitt had received business assistance from his father which prompted this provision.

The oral contract to make an irrevocable will provided for the payment of $150.00 per month to Elma Pitt for her life and for specific legacies and residuary bequests to the two children of Pitt and his wife, Elma Pitt, in consideration of the surrender by her of all her marital rights in his estate, as recited at the bottom of page seven of said will of William Pitt, over her signature. The will was drafted in complete accordance with the oral understanding the parties had at this conference, and was executed on June 20, 1947.

In Article V of the will, plaintiffs, Fred D. Pitt and E. H. McVey were appointed to be the trustees of the trust expressed in the will.

After Mr. Pitt's death on May 30, 1950, all of the assets of his estate, including the 200 shares of stock of Insurance Exchange Building, Inc., and $20,-000.00 face value of Tokyo Electric Light and Power Co., bonds remained under the jurisdiction of the Surrogate's Court of Union County, New Jersey, for probate administration.

E. H. McVey, one of the plaintiffs in this action, was the sole executor of Mr. Pitt's probate estate. The executor filed a timely federal estate tax return which listed as assets the above mentioned securities. It has been agreed that at the decedent's death the value of each of these assets was as follows:

| | |
|---|---|
| 200 Shares Insurance Exchange Building, Inc., | $90,000.00 |
| $20,000 face value Tokyo Electric Light and Power Company | 0.00 |

In May of 1953, after the termination of probate proceedings, all remaining estate assets passed to the plaintiffs as trustees under the trust created by the decedent.

In 1954, the trust sold the 200 shares of Insurance Exchange Building, Inc., stock for a consideration of $220,000.00, and also sold $4,000.00 face value of the Tokyo bonds for $3,266.68. In its 1954 fiduciary income tax return, the trust used as its basis for these securities in computing gain or loss, the alleged cost to decedent, and reported capital losses of $82,616.22 on the sale of the Insurance Exchange shares and $343.32 on the sale of the Tokyo bonds. Because of other sales it showed a net long term capital loss of $71,383.34.

For its 1955 fiduciary income tax return, the trust claimed a capital loss carry-over from 1954 and also reported a gain of $98.94 on the sale of the remaining Tokyo bonds for $14,501.84, again claiming decedent's basis as the basis to the trust in determining gain or loss.

Upon audit and review of these returns, the Internal Revenue Service disallowed the claimed losses and loss carryovers, and determined that the trust had realized gains from the sale of the aforementioned assets, using as the trust's basis for these assets in computing gain or loss their fair market value at the date of decedent's death. The Internal Revenue Service determined that the trust had realized a long-term capital gain of $130,000.00 on the sale of the Insurance Exchange Building, Inc., shares, and a long-term capital gain of $3,266.68 on the sale of $4,000.00 face value Tokyo bonds in 1954, and also a long-term capital gain of $14,501.84 during 1955.

As a result of these adjustments, deficiencies were assessed against the trust in the amount of $34,288.81, in income tax and interest of $8,754.92 for the year 1954, and $6,491.56 in income tax and interest of $1,267.98 for 1955. These deficiencies were paid and after filing of timely claims for refund and the rejection thereof, the instant suit for refund was commenced.

Plaintiffs' contention is that the contract entered into between Mr. and Mrs. Pitt constituted a transfer in trust other than by gift, bequest or devise within the meaning of Section 1015(b) of the 1954 Internal Revenue Code, and thus the trust is entitled to use as its basis the same basis as the property would have had in the hands of Mr. Pitt. Plaintiffs rely on § 1015(b) of the 1954 Internal Revenue Code, 26 U.S.C.A. § 1015(b), which provides as follows:

"(b) *Transfer in trust after December 31, 1920.* If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by a gift, bequest or devise), the basis shall be the same as it would be in the hands of the grantor increased in the amount of gain or decreased in the amount of loss recognized to the grantor on such transfer under the law applicable to the year in which the transfer was made."

The Government contends that there was no transfer in trust by Mr. Pitt during his lifetime, and that the securities in issue were acquired from the decedent through the trust established in Mr. Pitt's will, thereby requiring the trust to use the fair market value at the death as its basis under § 1014(a) of the 1954 Internal Revenue Code, 26 U.S.C.A. § 1014(a).

■ The Government contends that the contract in question was not enforceable because it was void under the statute of fraud. Without a detailed discussion on this point, the Government's position must be sustained. Jackson v. Tibbling, Mo., 310 S.W.2d 909.

■ I think it cannot be successfully disputed that the law of the place of the domicile of Pitt is controlling. A number of New Jersey cases have been cited on whether or not an *inter vivos* trust was created under these facts, but I find the case of Salvemini v. Giblin, 24 N.J. 123, 130 A.2d 842, to be more nearly factually parallel to this case than any other.

There a contract had been entered into by Carmine Pascale with the defendant providing that in consideration of the defendant's consent to act as his housekeeper, Pascale "will execute a Last Will and Testament in favor of Dorothy Giblin in which he will leave her all his entire estate, real, personal and mixed property, providing that she is still his housekeeper on the date of his death".

Pascale apparently deeded his property to some relatives and was later committed to a mental institution. The court had this to say:

"His (Pascale) obligation was to leave defendant by will whatever should constitute his estate at the time of his death, and of course his will executed simultaneously with the contract and in conformity with it cannot operate in his lifetime. He did not grant her a present interest in the property here involved; *nor did he bargain away his right to sell it.*" [Emphasis supplied.]

Plaintiffs rely upon the Illinois case of, In re Johnson's Estate, 389 Ill. 425, 59 N.E.2d 825. In that case a postnuptial written agreement was entered into between the deceased Mrs. Johnson and her husband, under the terms of which, in consideration of the payment to her of $10,000.00 by her husband on or before a certain date, she would bequeath a ⅛th part of her estate to his children by a former marriage.

One of the four children predeceased the decedent, and in her will, instead of leaving ⅛th of her estate to the remaining three children, she left each of them a ¹⁄₂₄th interest, or ⅛th of her estate.

Subsequent to her death a controversy arose as to whether or not the three were entitled to the ⅙th or ⅛th. The controversy was amicably adjusted in the probate court in which it was agreed that they should receive the ⅛th of the estate, less $1,000.00. The question arose as to whether or not this amount was subject to an inheritance tax. The court held that it was not.

The fact that that court determined that the beneficial interests of the legatees and devisees were derived under the contract and not subject to the payment of inheritance tax (59 N.E.2d loc. cit. 828) does not add support to plaintiffs' position here, because that court held:

"In this case, the children of the husband were, under the contract, entitled to succeed to the beneficial interest in one sixth of the net estate of the wife. In case of breach of the contract, their remedy would have been a claim for damages for such breach. *The measure of the damages would be the value of that interest at the time of the death of the testatrix.* Downing v. Harris Trust & Savings Bank, 318 Ill. 323, 149 N.E. 256. The will neither increased, diminished, enlarged nor changed the rights under the contract. If no will had been made, those rights would have been exactly the same." [Emphasis supplied.]

■ Plaintiffs here contend that they took under the contract and thus an *inter vivos* trust was somehow automatically put into operation. However, under the Johnson case, the court determined that "the measure of damages would be the value at the time of the death of the testatrix". How, therefore, could an *inter vivos* trust be created which gives the "beneficiaries" thereof no present interest until the death of the "settlor"?

By its very nature the beneficiary of an *inter vivos* trust receives an immediate interest. Thus, under the controlling case of Salvemini v. Giblin, supra. and under plaintiffs case, no *inter vivos*

trust was created, and I cannot see how plaintiffs can seriously contend that the Johnson case supports their position that an *inter vivos* trust was created.

It is my conclusion that there was no *inter vivos* transfer of any rights under the terms of the contract, and that the rights of the parties were determined under the will by gift, devise or bequest.

This would be determinative of the issues pending before this court, but in view of the fact that there have been other questions raised, it may be advisable for the court to make conclusions of law in order to dispose of those issues.

It is the Court's conclusion that:

■ 1. The exchange by Pitt in March of 1943 of his stock in the Twenty-One Company, and the principal indebtedness owed to him by said company, plus advances made by him for corporate organization expense, for stock and notes of the newly organized Insurance Exchange Building Inc., constituted a tax free exchange on which neither gain nor loss was recognizable within the meaning of §§ 112(b) (5), 113(a) (6), and 113(a) (7) of the 1939 Internal Revenue Code, 26 U.S.C.A. §§ 112(b)(5), 113(a)(6), 113(a)(7).

2. At the time of the exchange on or about March 8, 1943, none of the items included within the exchange had a fair market value and no basis existed in that exchange of properties, for the levy of a tax.

3. Interest accrued and unpaid on Pitt's cash advances at date of the exchange on or about March 8, 1943, did not constitute an integral part of the debt so exchanged.

4. The execution by decedent of his will on June 20, 1947, did not create a transfer in trust.

5. There was no transfer in trust by Mr. Pitt during his lifetime, and that the securities in issue were acquired from the decedent through the trust established in Mr. Pitt's will, thereby requiring the trust to use the fair market value at death as its basis under Section 1014 (a) of the 1954 Internal Revenue Code.