Fred D. PITT and E. H. McVey, Trustees of the Estate of William P. Pitt, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17256.

United States Court of Appeals Eighth Circuit.

June 28, 1963.

Rehearing Denied Aug. 26, 1963.

William E. Kemp, Kansas City, Mo., for appellant; Thomas J. Wheatley, Kansas City, Mo., on the brief.

Harry Marselli, Atty., Dept. of Justice, Washington, D. C., for appellee; Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Giora Ben-Horin, Attys., Dept. of Justice, Washington, D. C., and F. Russell Millin, U. S. Atty., Kansas City, Mo., and Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., on the brief.

Before JOHNSEN, Chief Judge, MATTHES, Circuit Judge, and GIBSON, District Judge.

MATTHES, Circuit Judge.

In this action, instituted under Title 28 U.S.C.A. §§ 1340 and 1346(a) (1), appellants (plaintiffs below) seek a refund of income taxes alleged to have been illegally assessed and collected from them for the years 1954 and 1955. The trial court found for the government, Pitt v. United States, W.D.Mo., 209 F.Supp. 624 (1962), and this appeal follows.

The controversy brings into issue the proper basis for 200 shares of stock of Insurance Exchange Building, Inc., and $20,000 face value bonds of Tokyo Electric Light & Power Co., for the computation for income tax purposes of gain or loss upon their sale. More precisely, the question is whether, as contended by the Government and as held by the trial court, the securities were acquired by appellants as Trustees of the William P. Pitt Estate through Pitt's last will and testament so that the basis was the fair market value at Pitt's death [§ 1014(a), Int.Rev.Code of 1954]; [1] or whether, as contended by appellants, a trust was created during Pitt's life and the securities passed to appellants as trustees by virtue of an oral contract between Pitt and his wife so that the securities retained as their basis their cost in Pitt's hands, [§ 1015(b), Int.Rev.Code of 1954].[2]

Since the material facts are not in dispute, were in the main stipulated, and are accurately stated in the trial court's opinion, we present only those facts essential to a proper understanding of the issues on appeal.

---

1. § 1014(a) [26 U.S.C.A. § 1014(a)], provides in pertinent part that:
"* * * the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death * * *."
§ 1014(b) provides:
"For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:
"(1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent;
"(2) Property transferred by the decedent during his lifetime in trust to pay the income for life to or on the order or direction of the decedent, with the right reserved to the decedent at all times before his death to revoke the trust;"

2. § 1015(b) [26 U.S.C.A. § 1015(b)], provides:
"Transfer in Trust After December 31, 1920.—If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by a gift, bequest, or devise), the basis shall be the same as it would be in the hands of the grantor increased in the amount of gain or decreased in the amount of loss recognized to the grantor on such transfer under the law applicable to the year in which the transfer was made."

William P. Pitt (decedent) and his wife, Elma, experienced marital difficulties for many years prior to his death on May 30, 1950. The decedent separated from his wife and moved to New Jersey in 1937, was residing there when his will was executed on June 20, 1947, and was a resident of that state at the time of his death. Approximately ten years after their separation, Mrs. Pitt became fearful that her husband would exclude their two daughters from participating in his estate and desired that they should share equally with decedent's other children, a son and a daughter by a former marriage. Negotiations between Mr. and Mrs. Pitt resulted in the former orally agreeing to execute a will which would provide an annuity for Mrs. Pitt and a specific bequest to their two children. The will was drafted in complete accord with the oral understanding, and specifically recited, above Mrs. Pitt's signature, that she was surrendering all her marital rights in her husband's estate in consideration of the benefits provided under the will.

After specific bequests of Mr. Pitt's laboratory equipment, certain tools and supplies, and his home and furnishings, the will provided that "all the rest, residue and remainder" of the estate (including the securities here in controversy which were not *specifically* mentioned in the will) was given, devised and bequeathed to Fred D. Pitt (son) and E. H. McVey as trustees. The trustees were directed to pay out of the income of the trust estate a stipulated amount monthly to Mrs. Pitt, subject to the right to pay to her, during the period of the trust, or in any event at its termination, out of the corpus of the estate a lump sum based upon her life expectancy. From the date of decedent's death, the trust was to continue for a period of ten years, at the termination of which the trustees were directed to pay the sum of $75,000 to each of Pitt's three daughters, and to distribute the remainder of the estate in equal shares to his four children. Other provisions of the will, not relevant here, gave the trustees broad authority, imposed certain conditions upon them and provided for their compensation.

The above-mentioned securities and other residuary assets were not transferred to the trustees of the estate until after the termination of the New Jersey probate of Mr. Pitt's will and the administration of his estate in May, 1953. In 1954, the trustees sold the 200 shares of stock of Insurance Exchange Building, Inc., for $220,000 and also sold $4,000 face value Tokyo bonds for $3,266.68. The remaining $16,000 face value Tokyo bonds were sold for $14,501.84 in 1955. At Mr. Pitt's death, the stipulated value of the 200 shares of stock was $90,000, and the stipulated value of the $20,000 face value bonds was no dollars. However, in the 1954 fiduciary income tax return the trustees used as the basis for the securities the alleged cost to decedent, and thus reported a capital loss of $82,616.22 on the sale of the Insurance Exchange shares, and $343.32 on the sale of the Tokyo bonds. In their 1955 fiduciary income tax return, the trustees claimed a capital loss carry-over from 1954 and reported a gain of $98.94 on the sale of the remaining Tokyo bonds. The Government disallowed the claimed losses and loss carry-over, using as the trust's basis for the securities in computing gain or loss their fair market value at the date of decedent's death. Thus, determining that the trust had realized gains from the sale of the securities, the Government assessed a substantial tax deficiency against the trust for the two years. As noted at the outset, the trustees paid the assessed deficiency but commenced this action to secure a refund of the amount so paid.

In contending that § 1015(b) is applicable, appellants assert that: (1) a contract to make a will, for a consideration, is not a testamentary disposition of property; and (2) that property transferred in accordance with the terms of a will which was executed pursuant to a valid contract is not transferred by bequest or devise but by the contract.

Having advanced these legal concepts, appellants, while conceding that there was no physical transfer of the stock and bonds, posit the theory that the "obligation of Mr. Pitt and the right of the beneficiaries became fixed as of the date of the contract and the irrevocable will which incorporated it—an *inter vivos* transaction."

It is universally recognized that a contract to bequeath or devise property is valid and enforceable if it possesses the elements of a valid contract. 1 Bowe-Parker: Page on Wills § 10.1 (1960); 57 Am.Jur., Wills § 166; Steele v. McCargo, 8 Cir., 260 F.2d 753 (1958); Drewen v. Bank of Manhattan Co. of City of New York, 31 N.J. 110, 155 A.2d 529, 76 A.L.R.2d 221 (1959); State ex rel. St. Louis Union Trust Co. v. Sartorius, 351 Mo. 111, 171 S.W.2d 569 (1943). But appellants' second proposition—their thesis that decedent's will was irrevocable because it was executed pursuant to the oral agreement—is not only lacking in legal support, but is contrary to all authority on the subject. The general rule is succinctly stated in 57 Am.Jur., Wills § 458, as follows:

> "Revocability is an essential characteristic of a will. * * * Wills are revocable to such an unlimited degree that even an express provision in a will providing that it is not revocable in no wise prevents the will from being actually revocable.

> "A will executed pursuant to a contract to make a will is revocable and is not entitled to probate if a revoking will is executed; however, the testator cannot relieve himself of the obligation of the contract by revoking the will. In other words, a will is revocable but a contract to make a will is not."

See also 1 Bowe-Parker: Page on Wills, supra, §§ 10.2 and 10.3; Cotnam v. Commissioner, 5 Cir., 263 F.2d 119, 70 A.L.R.2d 1035 (1959); Sellyei v. Lecso, 28 N.J.Super. 593, 101 A.2d 26 (1953); Humphreys v. Welling, 341 Mo. 1198,

111 S.W.2d 123 (1937), holding at p. 128 of 111 S.W.2d: "Wills are ambulatory until the death of the testator and, hence, are said to speak from death"; Anderson v. Eggers, 63 N.J.Eq. 264, 49 A. 578 (1901).

Although appellants characterize the effect of the agreement as an "inter vivos transaction" or as a "trust by contract," in our view, regardless of the nomenclature employed, determination of the merits of appellants' position depends upon whether a trust inter vivos (sometimes called a "living trust") was created. "A traditional classification of trusts, from the viewpoint of whether they become effective after the death of the settlor or during his life, is into testamentary trusts or trusts inter vivos, or as the latter sometimes are called, 'living trusts.'" 54 Am.Jur., Trusts, § 5. A manifestation of intention to create a *present* trust and a definite and complete present disposition of the trust property, even though enjoyment is to take effect in the future, are among the essential elements for the creation of any express trust. 54 Am.Jur., Trusts § 30; 1 Scott, Trusts § 26 (2d ed. 1956).

Here, when Mr. and Mrs. Pitt entered into their oral agreement, Mr. Pitt manifested neither an intention to create a present trust nor to dispose of any property or right to any property at that time. A present "living trust" was not created, and the securities did not pass from decedent to this trust during his life. To the contrary, any reasonable assessment of the facts and the applicable legal principles compels the conclusion that by his last will and testament decedent created a testamentary trust, and upon his death the trustees acquired the residue of his estate, including the mentioned securities. See Restatement, Trusts § 56 (1935); 1 Scott, Trusts §§ 26, 26.2, 32.1 (2 ed. 1956).

Appellants rely strongly upon the Illinois cases of In re Johnson's Estate, 389 Ill. 425, 59 N.E.2d 825 (1945), and In re Greiner's Estate, 412 Ill. 591, 107 N.E.2d 836 (1952). Quite apart from the lack of precedential value of Illinois

law on the facts here presented,[3] neither of the cited cases provides any comfort to appellants' position. Both involved the question whether certain bequests under a will were subject to the Illinois inheritance tax. While there is language in the opinions which, considered out of context, lends some weight to appellants' theory, an analysis of the court's pronouncements in light of the relevant and material facts, demonstrates that they are inapposite here. Indeed, in In re Johnson's Estate, supra, the Illinois court used this pertinent language:

"Where the contract is to bequeath a definite sum of money or property of specific value, no title passes under the contract, but the beneficiaries become creditors of the estate to that extent. Where there is a breach of the contract to make the bequest, the remedy is a claim against the estate in the nature of a claim for damages for such breach. * * * In the case of a contract to bequeath a specific sum of money or property of specific value, the principle on which such contracts are enforced is that the promisee is entitled to have, out of the estate, the the amount designated, if the testator leaves sufficient assets. In all such cases the testator is free to use and dispose of his entire estate during his lifetime." 59 N.E.2d at 827.

Compare also, Adams v. Hoshauer, 29 Ill.App.2d 2, 172 N.E.2d 399 (1961); Scham v. Besse, 397 Ill. 309, 74 N.E.2d 517 (1947).

While factually distinguishable from the instant controversy, the New Jersey case of Salvemini v. Giblin, 24 N.J. 123, 130 A.2d 842 (1957), is apropos on general principles of law. There, the testator agreed with his housekeeper that he "will execute a Last Will and Testament in favor of Dorothy Giblin in which he will leave her all of his entire estate * * * providing that she is still his housekeeper on the date of his death * * *." In considering the effect of the agreement, the court stated:

"His obligation was to leave defendant by will whatever should constitute his estate at the time of his death, and of course his will executed simultaneously with the contract and in conformity with it cannot operate in his lifetime. He did not grant her a present interest in the property here involved; nor did he bargain away his right to sell it." 130 A.2d at 844.

See also Minogue v. Lipman, 25 N.J. Super. 376, 96 A.2d 426 (1953), affirmed, 28 N.J.Super. 330, 100 A.2d 684 (1953).

In holding that there is utterly no basis to support the theory that the securities or the right to them were transferred during Mr. Pitt's lifetime, we note the following supporting facts and circumstances: Under the agreement, the specific securities which became the subject of the additional income tax were not even mentioned; the agreement did not purport to create a "living trust" (its intended purpose was to establish at Mr. Pitt's death, an annuity for Mrs. Pitt and to assure her that her two children would share equally in Mr. Pitt's estate with his other two children); the will conformed to and was in accord with the oral agreement; Mr. Pitt, the testator, retained full ownership, control and supervision of all of his property after the agreement was entered into and after the will

---

3. Although the parties are in apparent agreement that local law controls determination of the question whether the securities passed by contract or by will, see Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960), they differ as to which state law controls. In oral argument appellants indicated that Missouri law was applicable, while in its brief the Government relied heavily upon New Jersey law—the law of the state in which decedent was domiciled and in which the estate was probated. Certainly Illinois law is not controlling, and regardless of whether Missouri or New Jersey law is applied, the law in these states as well as the prevailing general authorities in most other jurisdictions supports the decision of the trial court.

was executed (the agreement and the will notwithstanding, the testator had the absolute right to dispose of all or any part of his property in any manner); and testator's will was ambulatory and if testator had revoked it, Mrs. Pitt and other parties adversely affected by such revocation would probably have had an action based upon the contract against decedent's estate, but this right, under the above circumstances, does not mean that they had any interest in the residue of decedent's estate during his lifetime.

In summary, it is abundantly clear that the will created a testamentary trust, that the property in question was acquired by the trustees under the will upon the testator's death, and that consequently § 1014(a) of the Internal Revenue Code of 1954 is controlling.

The judgment is
Affirmed.